## MARY L. BURT *et al.*

### *v.*

## THE BATAVIA PAPER MANUFACTURING COMPANY.

1. PURCHASER — *of bankrupt estate, protected.* As a general rule, at an assignee's sale in bankruptcy the purchaser takes the title free and untrammeled, unless it be incumbered, and he has notice thereof either actual or constructive.

2. NOTICE — *of incumbrance.* Where a company, after the giving of a deed of trust to secure the payment of its bonds, issued other bonds in lieu thereof, secured by a second deed of trust, and the trustee released the prior incumbrance, but failed to exchange as to one of the old bonds, and the company's property was afterwards sold under proceedings in bankruptcy, it was *held*, that the record of the trust deed did not afford to the purchasers notice of the incumbrance as to the bond not exchanged.

3. In such a case, where a new company was formed which purchased the property of the old company, even if some of the members of the new company did know that one of the bonds secured by the prior deed of trust had not been paid when the new organization was effected, yet if they knew that a new bond was issued in place of the former, and that interest was paid on the indebtedness after the adjudication in bankruptcy, there being nothing to show but that it was paid on the new bond, this will not be sufficient to put the new company on inquiry as to whether the old bond is a lien on the property bought by it.

4. Knowledge by one of several corporators of the existence of an incumbrance on the property purchased by the corporation, whatever effect it may have on his interest, will not charge his associates with notice, where he does not act as their agent in forming the company.

Writ of Error to the Circuit Court of Kankakee County; the Hon. Hiram H. Cody, Judge, presiding.

Mr. J. H. Mayborne, for the plaintiff in error.

Mr. T. C. Moore, for the defendant in error.

Mr. Justice Walker delivered the opinion of the Court:

An incorporation was organized in Kane county, with its place of business at Batavia, called the Chicago Fiber and Paper Company, and in March, 1867, issued its bonds to the amount of $75,000, in sums of $1,000 each, and to secure the payment of the same executed to George B. Moss, the president of the company, a deed of trust on the lands and other property mentioned in the bill. These bonds were payable on September 1, 1872, with seven per cent interest semi-annually in gold. Of these bonds complainants purchased three, two of which they sold, but retained the other, and to enforce the payment of which they have brought this suit.

The trust deed was canceled by Moss, the trustee, on March 26, 1868, when another trust deed was executed to Moss, as trustee, on the same property, to secure $75,000 of other bonds, intended to be substituted for the bonds first issued. One of these latter bonds was held by Moss to be exchanged for the old one held by complainants, but the

exchange was never made.    Of this fact complainants were advised by letter from Moss, of the date of April 19, 1870, and offering to make the exchange.

The Chicago Fiber and Paper Company was declared a bankrupt by the United States District Court for the Northern District of Illinois, in the month of January, 1870 ; and by order of that court, on July 20th of the same year, the property in question was sold by the assignee in bankruptcy, to defendant, for the sum of $90,000, and he executed a deed to the purchaser, conveying the same free from all liens and incumbrances.

Defendant was organized as a corporate body, but a short time before the sale, for the purpose of becoming the owner of the property, and manufacturing paper, etc., afterwards ; and defendant claims to have been a *bona fide* purchaser for value, without actual or constructive notice of the existence of this bond.

It appears that in the month of February, 1870, at the instance of one Tiffany, of whom complainants purchased the bond, they sent it to James Van Inwagen, at Chicago, to be sold.    He held the bond until June 27, 1871, when he, at their request, returned it to complainants.    He in the meantime collected of Moss the interest due on the first of March and September, 1870, which he remitted, and at the same time stated he had seen Moss, and he informed him the company would take up the bond as soon as an injunction was removed which then restrained him from paying out any money of the company, but he, Moss, expected the restriction would soon be removed.    That after receiving back the bond they wrote to the clerk of the District Court, who informed them that the company had gone through bankruptcy, its property disbursed, and the company discharged from its debts long before that time ; that Moss had died, and his estate was insolvent, and they could collect nothing therefrom.

On a hearing in the court below on the bill, answer, replication, and proofs, the bill was dismissed for the want

of equity; and to reverse that decree complainants prosecute this writ of error.

As a general rule, at an assignee's sale in bankruptcy the purchaser takes the title free and untrammeled, unless it be incumbered, and the purchaser has notice either actual or constructive. Here it is not contended that the record gave notice of this indebtedness; and the trustee had entered a release or satisfaction of the trust deed that secured this bond, and it was recorded. On such a record the presumption arose that it was paid, and a purchaser would be protected unless he had notice that the bond was not paid and the release was wrongfully executed, or knew of facts which put him on inquiry. We do not understand that it is claimed that the record charges the purchaser with notice; but it is claimed that the persons organizing this company were members of the old company, and for that reason must be charged with notice that the bond had been issued, the trust deed executed to secure its payment, and that it had never been paid, and, being presumed to have known these facts, they should be held to have purchased subject to this bond. Or if they can not be charged with such notice, then, as Moss knew all the facts and that the bond had never been surrendered, and as he became one of the incorporators of this company, it must be bound by his knowledge, and the property liable for the payment of the bond, notwithstanding their purchase.

It may be that Van Nostwick and the two Cornells, who organized the new company whilst members of the old company, knew this bond was issued, the deed of trust executed, and they may have known that the bond was not actually paid, when this company was organized; but they no doubt knew that a new bond had been issued and placed in Moss' hands to be exchanged for it. And we find no evidence showing that they knew the exchange had not been made. And as we find that Moss paid two installments of interest after the company had been declared bankrupt, and its assets placed in the hands of an assignee,

he must have treated the new bond as being out and the company liable for its payment; and if this interest was paid from the funds of the old company, there is nothing to show that the money was not paid on the new bond, or that they knew it was not thus applied.

There is nothing to show that Moss was their agent in organizing the new company, and they can only be charged with his knowledge when acting as their agent or for them in the transaction of business where knowledge brought home to them affects their rights. Whatever effect his knowledge might have produced on his stock or interest in the new company, it does not follow that, because he had knowledge to charge himself, his knowledge became theirs, simply by his becoming associated with them in forming this company. Had he been the president or agent of this company, and received knowledge or information sufficient to put him on inquiry, in a matter where they would have been charged had it come to them, then they would have been bound by it.

It was the misfortune of plaintiffs in error that their agent was negligent, and disregarded their interest. Had he presented and proved their claim against the bankrupt corporation under the law, it would have been allowed, and we presume the court, as between plaintiffs in error and the other creditors, on a full presentation of all the facts, would have ordered it to be paid in full. This he did not do or attempt, nor, so far as this record discloses, did he notify plaintiffs in error of the bankruptcy in time for them to make the proof. Had he done so, the loss need not have occurred. But this is a misfortune against which the court is powerless to relieve on the facts appearing in this record. No error appearing, the decree of the court below must be affirmed.

*Decree affirmed.*