### WILLIAM S. WAIT et al.

*v.*

### FRANK W. SMITH et al.

| 92 | 385 |
|----|-----|
| 28a | 66 |
| 28a | 124 |
| 92 | 385 |
| 138 | 500 |
| 92 | 385 |
| 159 | 575 |
| 92 | 385 |
| 162 | 576 |
| 162 | 579 |
| 92 | 385 |
| 174 | 220 |

1. PURCHASER FROM CORPORATION—*whether chargeable with notice of the by-laws of the corporation.* A purchaser of land from a corporation, being a stranger to the corporation, is not bound to know that there is a by-law of the company requiring an order of the board of directors to authorize a sale of land owned by the company. So, where such purchaser receives a bond from a corporation for a deed for land purchased, he will be entitled to the deed according to

the provisions of the bond, notwithstanding there was no order of the board of directors authorizing the sale.

2. And though such purchaser may become a member of the corporation subsequently to the execution of the bond, he will still be entitled to a conveyance according to the terms of the contract, being chargeable with notice of by-laws of the corporation affecting such transactions only so far as they may concern what is to be done after he became a member.

3. SAME—*how far irregularities in the making of the deed will affect the equitable rights of the grantee.* And even if irregularities intervene in the execution of the deed after the purchaser becomes a member of the corporation, and thus chargeable with knowledge of by-laws of the company in reference to the conveyance of land, yet such irregularities, while they may render the deed invalid at law, will not avail to defeat the purchaser in the assertion of his equitable rights under his contract of purchase.

4. PROOF OF CONSIDERATION—*as to the manner thereof.* Upon bill filed by a purchaser of land, to correct a mistake alleged to have been made in the description of the premises in his deed and also in the conveyance to his grantor, claiming this relief as against a subsequent purchaser of the same land who had notice of the mistake, it is incumbent upon the complainant to show that he was himself a purchaser in good faith and for a valuable consideration, and not a mere volunteer.

5. And to prove the consideration in such case, the mere recitals in the deed in that regard are not enough,—the proof must show an actual payment of the consideration, and this must be outside and independent of the recitals in the deed.

6. NOTICE—*to subsequent purchasers—as to notice to one of several joint purchasers —whether notice to all—and as to effect upon the one having notice.* If an incumbrance or conveyance be in existence affecting the title to land, and a purchase be made by several jointly, or as tenants in common, those who have notice of the incumbrance or conveyance will hold their title in subordination to it, while those who did not have such notice will hold their title free from the claim to which their co-tenants are subjected.

7. The rule that notice to a co-tenant is not, by mere force of the relation of co-tenancy, notice to any of his companions, unless in cases of notices to quit, seems to prevail without any qualifications or exceptions.

8. RECORDING ACT—*misdescription in deed.* The recording of a deed for land affords notice to subsequent purchasers so far as the land therein is aptly or intelligibly described,—but no farther. So if there be a misdescription as to a part of the land intended to be conveyed, subsequent purchasers are not bound to know that other land than that embraced in the misdescription was sold and intended to be described.

9. SUBSEQUENT PURCHASER—*wrongful possession of his grantor.* Where a purchaser of land finds his grantor in peaceable possession of the premises at

the time of his purchase, he will be protected even though the possession of the grantor may have been wrongful, the purchaser having no knowledge in that regard.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Appellees filed their bill in chancery, in the court below, on the 21st September, 1872, alleging that James A. Steele, being the owner of a certain 85½ acre tract of land, undertook to convey the same March 1, 1853, to the Mississippi and Atlantic Railroad Company for the consideration of $2127 ; that, by mistake in description, a part of the right land was left out and other land not intended was included—about 40 acres ; that on February 20, 1855, by a sealed instrument, the Mississippi and Atlantic Railroad Company bargained and sold said land to Sanford J. Smith for the consideration of $2113.75—agreeing thereby to convey the same to Smith on April 1, 1855 ; that on September 6, 1855, said company conveyed the same to Smith by deed of that date ; that by mistake the original error of description was followed in both these instruments ; that Smith died intestate in September, 1860, in possession of the right land, leaving no widow, but two minor children—appellees—to whom the knowledge of said mistake did not come until recently ; that on May 21, 1862, William S. Wait obtained, fraudulently, from said Steele, for a pretended consideration of $25, a quitclaim deed for said land by its correct description ; that said Wait had complete knowledge that the land intended to be conveyed by said Steele to said company and by said company to said Smith was the same as that included in the deed from Steele to Wait; that said Wait was a director or in some way connected with said company from its creation to its dissolution ; that appellees understand that said Wait, in his lifetime, and his heirs since his death, pretend also to claim said land under a sheriff's deed following said erroneous description, and founded on certain judgments of the Madison county circuit court against said company.   Ap-

pellees insist that no title was conveyed by said sheriff's deed, since the judgments on which the same was founded were obtained long after the conveyance to Smith; that after the death of Smith, Wait fraudulently obtained possession of the land; that said Wait, his heirs and their grantees have had possession of the same ever since; that said heirs, on the 12th of February, 1867, attempted, by deed, to convey said land to Wesley Cook, Wm. Cook and Harrison Cook for the pretended consideration of $5500; that said Wait and his heirs received the rents and profits of said land to the time of said conveyance; that the said Cooks, at the time of said conveyance, had full notice of the rights of complainants in the premises; that said Wesley Cook died intestate December 25, 1869, leaving no widow, but two children, Edward and Arkansas Cook; that the Mississippi and Atlantic Railroad Company has become extinct.

The bill prays that the deed from Steele to Wait be set aside as fraudulent; that Steele be decreed to make a correct deed to appellees; that the deeds from the sheriff to Wait's heirs and from Wait's heirs to Cook be declared void; that possession of said land be delivered to appellees, and that an account be taken of rents and profits.

The Cooks answered, denying notice of the alleged rights of appellees, and claiming that they were purchasers in good faith.

The heirs of Wait answered, admitting that Steele was seized of the land described in the bill on March 1, 1853; denying that the railroad company made the alleged agreement of February 20, 1855, or the alleged deed of September 6, 1855, and charges that if the president and secretary of the railroad company executed any such agreement or deed in the name of such corporation, their acts in the premises were without authority and void; that at the time of the execution of the alleged deed and agreement said company was insolvent; that Smith had been for many years secretary of the corporation and was fully informed of its insolvent condition; that on February 20, 1855, and September 6, 1855, John Brough,

pretending to act as president of said corporation, made the agreement and deed aforesaid without the authority of said corporation—said Smith being then still a director thereof, and paying no consideration for said lands; that Charles J. Fox and Edward A. Fox obtained judgments in the Madison circuit court against said company on the 5th of September, 1856, caused executions on said judgments to be levied on said lands, and legal sale thereof to be had on the 8th of October, 1869; that William S. Wait having obtained a judgment against said company at the October term, 1858, as judgment creditor, caused an alias execution to be issued thereon on the 10th of October, 1860, and levied the same on said lands and redeemed them from such sale as such judgment creditor; and there being no further redemption, a deed for the same to said Wait was made December 29, 1860, by the sheriff; that afterwards James P. Anderson being in possession, Sanford J. Smith, by fraudulently representing himself as having an interest therein, induced said Anderson to pay him a small sum on account of rent. And that afterwards, in an action of ejectment by said Wait against said Anderson, appellees appeared, and by their attorneys set up the fraudulent title to the land set forth in the bill. And on trial, the Madison circuit court found, and it was entered of record in said suit, that said Wait was entitled to an estate in fee simple in said land.

The answer denies that Smith was ever in possession of the land; denies that Wm. S. Wait had knowledge, alleged in the bill, as to the lands intended to be conveyed by Steele; alleges that Wait, having title, bought of Steele for a valuable consideration the interest of Steele, as well he might; admits that the heirs of William S. Wait conveyed said land, for the consideration named, to Wesley, William and Harrison Cook, and that Wesley died as stated in the bill, leaving the heirs as named therein; denies all fraud.

On final hearing, the court decreed in conformity with the prayer in the bill.

Mr. JEHU BAKER, and Messrs. DALE & BURNETT, for the appellants.

Messrs. METCALF & GILLESPIE, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The evidence satisfactorily shows that there was a mistake, as alleged in the bill, in the description of the land in the deed from Steele to the Mississippi and Atlantic Railroad Company, and in the bond and deed from that company to Sanford J. Smith. William S. Wait was chargeable with knowledge that Smith intended to buy, and the Mississippi and Atlantic Railroad Company intended to convey to him, the land which it bought from Steele, and which Steele intended and attempted to convey to it. The deed from the railroad company was, in part, written by Wait, and he seems to have been an active agent of the company in the transaction with Smith. When Smith purchased he appears to have been a stranger to the railroad company. He was not then bound to know its by-laws and could not be affected by them. Occupying the relation he then did to the company, the bond is to be regarded as properly executed and obligatory upon the company. *Smith* v. *Smith et al.* 62 Ill. 493.

Aside from the question of the sufficiency of the proof of the consideration, before Smith became a member of the railroad company he was entitled to a deed for the land he had contracted for. It is impossible to see how the fact of his becoming a member of that company could lessen or affect his legal or equitable rights already vested in regard to the land. Granted that he is thenceforth chargeable with notice of the by-laws, etc., of the company. The effect of that is prospective, not retrospective. It may, with propriety, be insisted that what remained thereafter to be done to complete his title to the land should be done in conformity with the by-laws of the company; but what had been previously done was not

affected by them at the time, because he was a stranger to the company.

There was no necessity, so far as Wait was concerned, that the bond should be recorded, for the proof is ample that he had actual notice of it. If, then, we shall concede there were irregularities in the execution of the deed which rendered it invalid at law, it is manifest those irregularities can avail nothing here. We are now dealing with the equities, not the technical legal rights of the parties; and, very clearly, no irregular action, or refusal to act, by a board of directors or other officers of a corporation, can defeat the equitable rights of persons having lawful contracts with the corporation. It is enough for the present if it appear, as we think (waiving the question of the proof of the consideration) it does, that Smith was equitably entitled to have a deed.

Wait, having notice of Smith's rights, in subsequently acquiring title to the land omitted by mistake from Smith's deed, took as a trustee for Smith.

Thus far we concur in the view taken of the case by the court below. But Smith, to have been entitled to relief, must have shown that he was a purchaser in good faith for a valuable consideration, and not a mere volunteer—and appellees, as his heirs, occupy a position no more favored. This issue was distinctly presented by the answers, and there is no evidence, other than that found in the recitals of the bond and deed, tending to prove any consideration for the undertaking to convey. The rule is, the proof must show an actual payment of the consideration,—and this must be outside and independent of the recitals in the deed or instrument under which the party claims. *Brown et al.* v. *Welch,* 18 Ill. 343; *Keys impl'd* v. *Test,* 33 id. 316; *Roseman et al.* v. *Miller,* 84 id. 297.

But again: At the time the Cooks purchased, the land in controversy was in the quiet and peaceable possession of the heirs of Wait, and they had enjoyed such possession for several years previously. There is proof that Wesley Cook, one of the co-purchasers and grantees of Wait's heirs, had been

notified, before the purchase of the land, that the land belonged to appellees, and that the · title of Wait's heirs was worthless. But there is no proof that either Harrison Cook or William Cook had such notice, or that Wesley Cook was acting as their agent or attorney, by virtue of a partnership or otherwise, when he received notice, or when the purchase was made. On the contrary the proof repels such an inference. The only witnesses proving notice are Messrs. Metcalf and Gillespie. The former does not claim to have made any communication in regard to the title to either Harrison or William Cook, and the latter expressly denies that he ever made such communication.

The only evidence looking in the direction of an agency by Wesley Cook is the declaration of Mr. Metcalf that he thinks that in the purchase Wesley Cook did the business, because he never saw or talked to either William or Harrison Cook about it previous to the sale or afterwards, only to the effect that they had no personal notice of appellees' title. But it does not appear that this witness had anything to do with the sale of the land, or that he was in a position to know by whom the negotiations were conducted, or that those actively participating in the purchase should have communicated with him in regard to it. From aught that appears, his opportunity for knowing who were the active participants in effecting the sale may have been quite limited.

William Cook testifies: "Myself, Harrison and Wesley, made the bargain for the land. We wrote to Mr. Wait at Pocahontas. * * * John Vanhooser, a young man living with me, went to Pocahontas to see Wait about purchasing the land. He represented us. We sent him there. We sent out by him a bid on the land of $5500. William S. Wait, Jr., accepted it for the heirs. He subsequently came down to Troy with the deed executed and we met him there and paid him the money; each man took his own money and paid it to him, and the deed was made to us jointly. I mean by 'we' and 'us,' Wesley, Harrison, and myself. I would say that we commenced negotiating for the

land some two months before we bought it—we three did the bargaining for the land." And he denies all knowledge of any communication made to Wesley in regard to the title before the purchase.

Harrison Cook testifies that he knew of no knowledge that Wesley had in regard to the title, previous to the purchase; that at the time of the purchase, he, himself, had no knowledge or intimation that the title was not perfect in the Wait heirs; that they were in possession and claimed to own it, at the time.

It is said in Freeman on Co-tenancy, § 171: "If notice to one part owner ever operates as notice to another, it is rarely by reason of their relation as co-tenants. Unless one has been made the agent of the other, by virtue of partnership relations or of some other means, neither can ordinarily be charged and held accountable for the knowledge of the others. If an incumbrance or conveyance be in existence affecting the title to land, and a purchase be made by several jointly, or as tenants in common, those who have notice of the incumbrance or conveyance will hold their title in subordination to it, while those who did not have such notice will obtain their title free from the claim to which their co-tenants are subjected. The rule that notice to a co-tenant is not, by mere-force of the relation of co-tenancy, notice to any of his companions unless in cases of notices to quit, seems to prevail without any qualifications or exceptions."

In *Snyder* v. *Sponable*, 1 Hill (N. Y.) 567, there was a conveyance to a husband and wife jointly, and a prior unrecorded mortgage upon the land. It was held notice to the husband of the existence of this mortgage did not affect the wife. BRONSON, J., who delivered the opinion of the court, said: "On a conveyance to two or more persons, whatever may be the nature of their estate, I am not prepared to admit that notice to *one* would be sufficient to overcome the registry laws as to *all* of the purchasers." And again, speaking of the objection urged against the deed, he says: "The reason upon which the objection rests goes only to the party who had the

notice, and such estate as he would otherwise have taken under the conveyance may well fail without involving the other and innocent vendee in the same consequence. This would, I think, be so- on a conveyance to several persons either as joint tenants, except in the case of a trust estate, or as tenants in common, and I see no reason why the same rule should not apply on a conveyance to husband and wife."

The same doctrine, in effect, was announced by this court in *Burt et al.* v. *Batavia Paper Mfg. Co.* 86 Ill. 66, in which we held that knowledge by one of several corporators of the existence of an incumbrance on the property purchased by the corporation, whatever effect it may have on his interest, will not charge his associates with notice, where he does not act as their agent in forming the company.

Very clearly then, under the evidence before us, William and Harrison Cook are not chargeable with the notice given to Wesley.

We do not, so far as William and Harrison Cook are concerned, regard it as of consequence how, in the first instance, Wait obtained possession of the land. They had no such actual or constructive notice as charges them with knowledge of any irregularities in that regard. They found the heirs of Wait in the peaceable possession of the property, and, in the absence of knowledge to the contrary, were authorized in assuming that their possession was lawful.

But it is argued the record of Smith's deed was sufficient to put the Cooks on inquiry. We do not so understand it. That record was notice of Smith's title to all the land therein aptly or intelligibly described—but no farther. *Rodgers* v. *Kavanaugh et al.* 24 Ill. 583.

We perceive nothing in the deed, on the other facts proved, that should have put the Cooks upon notice that the deed of Steele to Wait and Wait's possession of the land were in bad faith and in violation of any of the rights of appellees.

The decree is reversed and the cause remanded.

*Decree reversed.*