EDMUND S. HOLBROOK, Plaintiff in Error, *v.* WILLIAM CONEY *et al.*, Defendants in Error.

### ERROR TO TAZEWELL.

Under the act of Congress of 1841, all but the excepted property of the bankrupt passed to the assignee, although not included in the schedule.

The fifty-first rule in bankruptcy, adopted by the court, is valid, and properly vested discretion in the assignee, and was binding upon him, and a sale and conveyance in conformity with this rule with proper recitals, will be good.

If there is an omission to produce a certified copy of the decree, in order to sustain an assignee's deed, exception should be taken in the court below.

THIS was an action of ejectment by plaintiff to recover portions of Campbell, Durley & Newhall's addition to the town of Pekin, tried at the February term of the Circuit Court, before HARRIOTT, Judge, without a jury, and resulted in a verdict and judgment for defendants.

The plaintiff, in order to sustain the issue on his part, and to show that plaintiff and defendants claimed title to the premises described in the declaration from a common source, to wit, from James B. Campbell, a bankrupt, by William C. Bostwick, his assignee, read in evidence, without objection, a deed by said Bostwick, as such assignee, to William B. Doolittle, of the lands described in the declaration, dated the 17th day of June, 1851, and recorded April 25th, 1853.

Plaintiff also read in evidence, without objection, for the same purpose, a deed of John A. Jones to defendant Prettyman, produced by Prettyman on notice, containing the same lands, dated the first day of December, 1855, and recorded January 8th, 1856.

This deed rehearses a decree in chancery, in the Tazewell

Holbrook *v.* Coney et al.

Circuit Court, October term, 1855, at the suit of Amos L. Merriman, against the heirs and representatives of H. O. Merriman, deceased, and the heirs and representatives of Wm. B. Doolittle, deceased, setting forth that said lands mentioned in said deed of Bostwick to Doolittle were purchased in partnership by said H. O. & A. L. Merriman and said Doolittle in the name of Doolittle, and directing that said lands be sold as partnership effects, and appointing Jones as commissioner for such purpose.

Defendants admitted that they took possession of the premises described in the declaration, immediately after the date of the deed of Jones to Prettyman, and continued such possession to the present time.

Plaintiff then read in evidence, without objection, the 51st rule of the said District Court, which was in words and figures following, to wit:

" It shall be the duty of the assignee of the bankrupt to make sale of all the right, title and interest of the bankrupt, whether equitable or legal, in and to any real estate wheresoever situated, with all due diligence, having due regard to the interest of the creditors, (unless some one of said creditors shall, previous to the time appointed for such sale, file with the assignee his written dissent thereto, when it shall be the duty of such assignee to refer the matter to the court,) and that the sale of said real estate, or any interest therein, be made either for cash or upon a credit not exceeding one and one-half years, as the assignee shall deem most advisable, and upon the premises to be sold, or at some public sale, as said assignee shall deem best for the interest of said estate ; at least twenty days' notice of the time, place and terms of sale being first given by affixing up at least three notices, and also by publication in some newspaper nearest the premises, when, in the opinion of the assignee, the property is sufficiently valuable to justify the expense of such publication."

Plaintiff then offered in evidence a deed by William C. Bostwick, as assignee of James B. Campbell, to plaintiff, in words and figures following, to wit:

| | |
|---|---|
| Wm. C. Bostwick, Assignee in Bankruptcy of James B. Campbell, TO E. S. Holbrook. | No. 100088. Recorded, etc., October 28th, 1850. |

Whereas, by a decree of the honorable the District Court of the United States of America for the district of Illinois, sitting as a court of bankruptcy, James B. Campbell, of the county of Jo Daviess, in said district, was decreed a bankrupt, which said decree bears date the 3rd day of October, A. D. 1842, and is in the words and figures following, to wit:

Holbrook *v.* Coney et al.

DISTRICT COURT OF THE UNITED STATES, }
for the District of Illinois.

*No.* 919.                                    *October 3rd,* 1842.

In the matter of the petition of James B. Campbell, to be declared a bankrupt, and to be discharged from his debts:

On hearing the petition of said James B. Campbell, filed in this court on the twenty-second day of August, A. D. 1842, praying to be declared a bankrupt, in pursuance of the act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," and it appearing satisfactorily to the court that notice has been published in pursuance of the previous order of this court, and no sufficient cause being shown to the contrary, it is therefore ordered, adjudged and decreed, that the said James B. Campbell be deemed a bankrupt, within the purview of said act. And it is further ordered and adjudged, that William C. Bostwick, of the county of Jo Daviess, be and hereby is appointed assignee of said bankrupt, upon his entering into, before a commissioner, and filing with the clerk of this court, a bond in the penal sum of —— dollars, with two or more sureties, to be approved by the commissioner of the county where the bankrupt resides, conditioned for the due and faithful discharge of all his duties as such assignee, and his compliance with the orders and directions of the court.

And whereas, I, the said William C. Bostwick, appointed assignee of the said James B. Campbell, a bankrupt, in and by virtue of the decree aforesaid, have complied with the provisions of said decree, and have filed with the clerk of said court my sufficient bond, in the penal sum of five hundred dollars, with the sufficient securities, approved by the proper commissioner, and have complied with all other the regulations and directions of said decree, and with all the rules in bankruptcy of said honorable court, so far as the same apply to, or are binding and incumbent upon me, and have, as such assignee, sold the property hereinafter described, at public auction, at the court house in said county of Jo Daviess, having first duly advertised the same, according to law, and the said pieces and parcels of land and lots having been offered and sold separately, and having been sold and struck off at the prices following, and said property, lands and lots being described and designated as follows, to wit: (here follows the description of lands sold, embracing those named in the declaration,) and the said Edmund S. Holbrook being the highest and best bidder for each and every of said tracts of land and lots of ground, he became the purchaser thereof at said sale, and the same were severally and each and every of them struck off to him.

Now, therefore, know all men by these presents, that I, the

35

said William C. Bostwick, as assignee of the said James B. Campbell, a bankrupt, as aforesaid, in consideration of the sum of thirty dollars to me in hand paid by the said Edmund S. Holbrook, the receipt whereof is hereby acknowledged, do, as such assignee, sell and convey unto the said Edmund S. Holbrook, and to his heirs and assigns, the said tracts of land and lots of ground, as the same are hereinbefore designated and described; to have and to hold the said tracts of land and lots of ground unto the said Edmund S. Holbrook, his heirs and assigns forever.

In witness whereof, I, the said William C. Bostwick, in my capacity of assignee of said James B. Campbell, a bankrupt, as aforesaid, have hereunto set my hand and seal this eighteenth day of October, A. D. 1850.

WM. C. BOSTWICK, [SEAL.]

Assignee in Bankruptcy of James B. Campbell.

STATE OF ILLINOIS, }
JO DAVIESS COUNTY. }

Before me, Richard Seal, clerk of the County Court of said county, personally appeared this day William C. Bostwick, to me personally known to be the identical person described in, and who executed the foregoing deed, and acknowledged to me that he had executed the same freely and voluntarily, for the uses and purposes therein mentioned.

Witness my signature and the seal of said court, this 18th day of October, A. D. 1850.

[SEAL.]                                    RICHARD SEAL, *Clerk.*

To the reading of which, defendants objected, on the ground that it did not appear that there was any order of the court requiring or authorizing the assignee to make the sale of the land described in the deed, and in controversy, or setting any time or place of such sale.

The court ruled that said deed could not be read in evidence, to which decision plaintiff excepted.

The deed of Bostwick to Doolittle recites this additional matter, after the words "having advertised the same according to law," page 11 of record—"and said sale having been made in pursuance of a decree of said district court, dated 15th May, 1851, and which said decree is in words and figures following, to wit:

"In the matter of the petition of William C. Bostwick, assignee in bankruptcy, of James B. Campbell, declared a bankrupt.

In the District Court of the United States, within }    *Petition for the sale of real*
and for the District of the State of Illinois. }    *estate of bankrupt.*

And now on this day, this case coming on to be heard, on the

petition of William C. Bostwick, assignee of James B. Campbell, a bankrupt, upon the exhibits and proofs, and it appearing to the court, that the said James B. Campbell has an interest and claim in and to the following real estate, situate in the county of Tazewell, and State of Illinois, to wit:" (here follows a description of the tracts of land and lots of ground, in the deed hereinafter mentioned and described, which said lands were not contained in the schedule filed in said court by said bankrupt.) "It is therefore ordered, adjudged and decreed, by said court, that the said assignee, William C. Bostwick, proceed to sell all the estate, right, title and interest, in him vested as such assignee, in and to the lands above specified, in such manner, upon such terms, and at such times, as is specified in the rules of this court, heretofore made and still in force, in regard to the sale of real estate of bankrupts. It is further ordered, that said assignee make a report at the earliest opportunity."

Then the deed in other respects is like the deed to plaintiff, except the date and name of grantee, and time of recording, except in this, at the close:

"Now therefore, know all men by these presents, that I, William C. Bostwick, as assignee of the said James B. Campbell, a bankrupt, as aforesaid, in the consideration of the sum of fifty dollars, to me in hand paid, by the said William B. Doolittle, the receipt whereof is hereby acknowledged, being the aggregate of the said several bids, as before mentioned, do, as such assignee, sell and convey, unto the said Wm. B. Doolittle, and to his heirs and assigns, all the right, title and interest, in me vested, as such assignee, in and to the lots, land and real estate, hereinbefore specified, designated and described at the date of said sale, to wit, this 17th day of June, 1851."

The errors assigned are: that the court erred in not admitting the deed of Bostwick to plaintiff, to be read in evidence; in finding for defendants; and in rendering judgment for defendants.

RoBERTS & LELAND, for Plaintiff in Error.

B. S. PRETTYMAN, for Defendants in Error.

WALKER, J. The first objection raised to the validity of the deed offered in evidence, is that the lots in controversy were never scheduled by the bankrupt. The third section of the bankrupt act of 1841 provides that all the property and rights of property of every description, name and nature, and whether real, personal or mixed, of every bankrupt, except the articles of property exempted by the statute, who by the decree of the

proper court, shall be declared a bankrupt within the act, shall by mere operation of law, *ipso facto*, from the time of such de-cree, be deemed divested out of the bankrupt without any other act, assignment or other conveyance whatsoever; and the same shall be vested, by force of the decree, in the assignee. How more comprehensive language, to vest the title in the assignee could have been employed, it is impossible to conceive. But lest a doubt might remain, the succeeding clause of the same section has, if possible, made it still more explicit, by providing, that "the assignee so appointed, shall be vested with all the rights, powers, and authorities to sell, manage and dispose of the same, and to sue for and defend the same, subject to the orders and directions of such court, as fully to all intents and purposes, as if the same were vested in, or might be exercised by such bankrupt, before or at the time of his bankruptcy, declared as aforesaid."

The property in controversy is not embraced within the exemption of the statute, and is subject to this provision. And by the operation of the decree of bankruptcy and the appointment of an assignee, the property "is vested in him without any other act, assignment or conveyance whatsoever." This most unquestionably excludes the supposition, that a schedule of the property was in any way essential to divesting the title out of the bankrupt, or vesting it in the assignee, however necessary it may have been for other purposes. When the case was pending in the court, and its judicial functions were invoked, and its decree pronounced, declaring the petitioner a bankrupt, he by the operation of law was thereby divested of his title, and by force of the same power, the appointment of the assignee vested him with the title in precisely the same manner and to the full extent, that it had been held by the bankrupt, and vested the assignee with power to sell, manage and dispose of the same, under the orders and directions of the court, to the same extent that the bankrupt might have done previous to the decree of bankruptcy. We have no question that by the decree of bankruptcy and the appointment of the assignee, the title vested in him under and by operation of the act, as fully as if it had been embraced in the schedule returned by the bankrupt.

It seems to us, that every principle of justice, independent of the enactment, requires that such should be the case. Otherwise the fraud or negligence of the applicant for the benefits of the act, would defeat the design of the law, deprive the creditors of their rights to participate in the avails of the bankrupt's estate, and enable him to evade the law. The design of the law was that all, but the excepted property should pass to the assignee, for the benefit of the bankrupt's creditors, and to vest it in the

assignee as their trustee, and good faith must be observed by the bankrupt, and if it has not been, he nor those claiming under him have any right to profit by its omission.

The title to the property in controversy having then vested in the assignee, the next question presented by this record is, did the conveyance by the assignee, transfer it to his grantee. It is urged that it did not for a want of a compliance with the provisions of the bankrupt act, inasmuch as the sale was not made at a time, place, or in the manner required by the court. We have seen that by the third section of the act, he is empowered " to sell, manage and dispose of " the property, " subject to the orders and directions of such court as fully, to all intents and purposes, as if the same were vested in, or might be exercised by such bankrupt, before or at the time of his bankruptcy, declared as aforesaid." The ninth section provides " That all sales, transfers and other conveyances of the assignee, of the bankrupt's property and rights of property, shall be made at such times, and in such manner, as shall be ordered and appointed by the court in bankruptcy." The evidence discloses the fact that the court rendering the decree in bankruptcy, have adopted a rule prescribing the duty of the assignee, which was numbered 51, and was read in evidence on the trial, and is this: " It shall be the duty of the assignee of the bankrupt to make sale of all the right, title and interest of the bankrupt, whether equitable or legal, in and to any real estate, wheresoever situated, with all due diligence, having due regard to the interest of the creditors, (unless some one of said creditors shall, previous to the time appointed for such sale, file with the assignee his written dissent thereto, when it shall be the duty of such assignee to refer the matter to the court,) and that the sale of said real estate, or any interest therein, be made, either for cash or upon a credit not exceeding one and a half years, as the assignee shall deem best for the interest of said estate ; at least twenty days' notice of the time, place and terms of sale being first given by affixing up at least three notices, and also by publication in some newspaper nearest the premises, when, in the opinion of the assignee, the property is sufficiently valuable to justify the expense of such publication."

This rule of the court having been adopted, became as binding upon the assignee as if it had been incorporated at length in the decree of bankruptcy. That he so regarded it, is apparent from the recitals in his deed. He there recites that he had been appointed assignee, and that he had complied with the provisions of the decree, had filed his bond with the clerk of the court, and had complied with all other regulations and directions of the decree, and with all the rules in bankruptcy,

so far as the same apply to, or are binding and incumbent on him. That he had sold the property at public auction at the court house of Jo Daviess county, having first advertised the same according to law, in separate lots, and that Holbrook became the purchaser.

Then was this sale conducted subject to the orders and directions, and was it made at such time and in such manner as was ordered and appointed by the court? It was unquestionably made in pursuance to the 51st rule, which must be regarded to be, as it undeniably was, an order of the court, and it was made subject to the directions of the court, because that rule prescribed the mode in which the sale should be made. The court by the rule authorized the assignee to fix the time, and to adopt the manner of making the sale. And as the assignee occupied to that court, for the purpose of selling the estate, the relation of a master, and as the court was in the very nature of things compelled to confide to some extent in his discretion, we are of the opinion that this was not an excess of authority conferred by the court in violation of the law, so as to render the act void. The policy of the act in adopting these provisions, undoubtedly was the protection of the creditors of the bankrupt, in their rights, and to vest the court with a large discretion, in having the assets converted, in the mode best adapted to the production of the largest fund that could be produced, for the benefit of the creditors. The statute has prescribed no time, nor has it indicated the manner of conducting the sale, but has left that to the court. And in determining that question, so many circumstances of a local character must necessarily have to be considered, that usually the assignee at the place would be as capable of determining them as the court. And we are of the opinion that the conferring of that discretion, by the court to the extent it was done upon the assignee by this rule, was warranted by the law.

In this conclusion we are fortified by the provisions of the fifteenth section of the same act. It has expressly provided that a copy of the decree in bankruptcy, and the appointment of the assignee as directed by the third section of the act, shall be recited in every deed for land, belonging to the bankrupt, sold and conveyed by the assignee, by virtue of the act. And that such recital, together with a certified copy of such order, shall be full and complete evidence of the bankruptcy and assignment to validate the deed, and that all deeds containing such recitals, and supported by such proof, shall be as effectual to pass the title of the bankrupt, of, in and to the lands therein mentioned and described, to the purchaser, as fully and to all intents and purposes, as if made by himself immediately before

such order. This deed contains the recital of the decree in full, and from it we are informed that Campbell was declared a bankrupt, and that Bostwick, the maker of the deed, was appointed the assignee. This is an ample recital of those facts, and the deed, together with a certified copy of the decree, affords all the proof required by the statute, that the title of the bankrupt in the premises had passed to the grantee. By the provisions of the statute, this deed is made as effectual to pass the title, as if executed by Campbell himself. This provision has precluded all inquiry in a court of law, into precedent facts.

All the court can do is to see that the deed contains the requisite recitals, and that there is a certified copy of a decree regular on its face that sustains the deed. The statute has not provided that this order shall fix the time and manner of making the sale, and if such a requirement were essential, it might just as well appear in any other order as in this. The order recited in this deed has every requisite of a valid and binding order. It is true that there was no offer to produce a certified copy of the decree, but an objection was not interposed for that reason, and unless that objection had been made in the court below, either when offered in evidence, or after all the evidence on the part of the plaintiff was heard, by motion to exclude the deed, it cannot be urged here. Neither was done in this case, and as the deed was properly admissible in evidence, the court erred in excluding it, and the judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*