JOHN H. AND WILLIAM H. POPE, ADMINISTRATORS, *v.* J. W. DAVENPORT.

1. ESTOPPEL—VOID AND VOIDABLE—EXECUTION SALE—PURCHASE.— A purchaser of land at execution sale bought under an agreement between the sheriff, the defendant in execution, and himself, that whatever might be his bid in excess of the amount due on the execution, the same should be satisfied by payment of the execution. The amount actually bid was in excess of the execution. The execution was satisfied by a payment partly in money and partly in a draft drawn by the defendant in execution on himself and accepted by the sheriff: *Held*—

1. That the defendant in execution was estopped from attacking the proceedings.

2. That a purchaser of the land sold who bought from the defendant in execution after the judgment, and before such sale, could, by proper proceedings, have set aside the sale.

3. The execution sale was voidable only.

4. The failure of the purchaser, after judgment and before execution sale, to assert his rights, would not authorize a stranger to set them up in a collateral proceeding.

5. The title of the purchaser, before execution sale, was subordinate to the judgment lien, and was not such a superior outstanding title as could be afterwards set up in a collateral proceeding.

6. A claimant of the land under purchase at a subsequent execution sale, made under the same judgment, could not complain that there was a failure to pay the excess of the bid over the amount due on the former execution. He could complain only if the draft given for a portion of the debt had not been paid, and by showing that there was authority for issuing the last execution.

2. EVIDENCE.—The introduction in evidence of the declarations of one not a party to the proceeding, only authorizes the adversary to introduce such further declarations as were made in the same conversation.

3. BANKRUPT—TITLE OF ASSIGNEE.—Under section 5046 of the Revised Statutes of the United States, the assignee in bankruptcy had the same right, title, power, and authority to sell, manage, and dispose of the property and estate of the bankrupt, as the bankrupt might or could have had if no assignment had been made.·

4. ASSIGNEE'S SALE—BANKRUPT.—The sale by an assignee in bankruptcy is not rendered void, as to the interest of the bankrupt, by reason of a failure to make an adverse claimant a party to the proceedings of sale.

5. RECITAL—POWER.—A mistaken recital by an officer of the source of his power to perform an official act, is immaterial, and does not invalidate the act if the power in fact exists.

6. BANKRUPT—ASSIGNEE'S SALE.—When a sale was made by an as-·· signee in bankruptcy of the bankrupt's interest, without notice to an adverse claimant, and the sale for that cause was not made to the best advantage, the adverse claimant whose interest was not affected could not complain.

7. WITNESS—PRACTICE.—It is not error to permit a witness to testify generally as to his knowledge of the matters in issue, without special interrogatories to each point.

8. PRACTICE—EVIDENCE.—Counsel, in examining a witness, have no right to read from a statement of facts, in the hearing of the jury, what purports to be the testimony of that witness, taken in another cause, as a basis for questions to that witness as to what was his evidence in that cause.

9. FACT CASES.—See opinion for circumstances under which the discretion of a judge in permitting evidence to be introduced after argument had begun, would become a fit subject for revision.

10. PAY FOR USE AND OCCUPATION.—To exempt a defendant in trespass to try title, against whom judgment is recovered, from liability for "use and occupation," under article 4306, he must prove both that he paid the taxes on the land, and that the plaintiff failed to pay the same.

APPEAL from Harrison.   Tried below before the Hon. A. J. Booty.

Suit was brought April 20, 1870, by J. B. Scruggs, against Edmund Jones *et al.*, freedmen, to try title to a tract of land described in the petition.   Jones *et al.* disclaimed, and A. Pope,

as landlord, intervened to defend the title. Pope died, and his death was made known to the court at the October Term, 1872; soon thereafter, J. H. and W. H. Pope, administrators of A. Pope, deceased, were made party defendants. In October, 1875, J. B. Scruggs went into voluntary bankruptcy, and that fact was made known to the court at the October Term, 1876. On the 31st of May, 1877, J. W. Davenport, the present plaintiff, intervened in the cause, and filed his petition claiming the land as a purchaser from W. G. Cain, assignee of J. B. Scruggs, under an order of the United States District Court. The only parties before the court at the trial were J. W. Davenport, plaintiff, and J. H. and W. H. Pope, administrators, defendants. A trial was had at the May Term, 1878, resulting in a verdict and judgment for the plaintiff, from which the defendants prosecuted this appeal.

Title to the land in controversy was in W. H. Dial up to March 1, 1864, when he sold it to J. M. Collins. Prior to the sale of Collins, Samuel Patrick, for the use of Snediker and Cole, recovered a judgment against W. H. Dial and others for the sum of $650, in the District Court of Harrison county, September 21, 1860. This judgment was duly recorded as the law directed at that time, and became a lien upon the land. After the issue and levy of the first execution, Dial carried the case by writ of error to the Supreme Court, and *supersedeas* was issued. The war coming on, the case remained undisposed of in the Supreme Court until May 29, 1867, when it was affirmed. A second execution was issued, and under it the land in dispute was levied on. This execution was returned, and on the 10th of August, 1868, an order of sale was issued commanding the sheriff to sell the land, and on the 1st of September, 1868, the land was offered for sale and bid in by H. McKay, who afterwards gave the name of J. B. Scruggs as the real purchaser, and to whom a deed was made. The facts about which the witnesses or parties differed were those bearing on the sale.

The plaintiff contended that there was no fraud in bringing

about or making the sale, and that while the sum of $2 per acre was bid, and publicly cried as the bid, there was a secret understanding between McKay, the bidder, and Snediker, one of the plaintiffs, Dial, the defendant in the judgment, and Perry, the sheriff, that the actual and true bid should be only a sum sufficient to satisfy the execution then in Perry's hands, and that this secret understanding controlled and fixed the real bid at the sale.

The defendant contended that the conduct of Dial and his attorney, McKay, in bringing about the sale was a fraud upon the rights of Collins, the true owner, and that the secret agreement was itself a fraud, as it hindered honest competition in the bidding.

The plaintiff contended that the entire bid was paid to the sheriff; that the payment of a sum in cash and the draft of Dial, drawn on himself, for $304, paid the amount due on the judgment, and that it fully complied with the bid. On this, the defendants maintained that the bid was $2 per acre, and that the sheriff had no right to make an agreement by which a less sum than that cried at the sale should be taken as the bid of the purchaser; that Collins, the vendee under Dial of the land, was the owner of whatever surplus might remain of funds arising from the sale, and that none of the parties to the agreement had the right to release the collection of this surplus. They also contended that the sheriff had no authority to receive Dial's draft for $304 in payment of any part of the bid, and maintained that Snediker, the plaintiff, had never authorized Perry, the sheriff, to receive the draft in payment.

There was much conflict in the evidence.

The plaintiff also claimed title through the bankrupt sale before referred to. The evidence on this subject was documentary.

The assignments of error are manifest from the opinion.

*James Turner,* for appellants.

I. Every party plaintiff or defendant is entitled to demand

and have the witness produced against him examined by ques-
tions, properly worded and distinctly put, calling for such facts
as the witness is supposed to know. No witness should be al-
lowed to make himself the judge of what is and what is not
legal and proper testimony. The adverse party should not in
this way be cut off from his undoubted right of objecting to
illegal and improper testimony going before a jury. It may
be replied that this matter is in the discretion of the court try-
ing the case, and to a certain extent it is; but such discretion
is liable to be abused, and, as in this case, to the detriment and
injury of the party complaining. The question has never been
before the court, and we cite no authority.

On the trial of another cause, the witnesses Dial and McKay
were both examined; the subject of inquiry was the same
as in this cause; there was a statement of facts made out and
signed by the counsel, the witness McKay being also counsel
in the cause; this statement of facts I held in my hands and
questioned the witnesses Dial and McKay. On cross-exami-
nation, I proposed to ask them if they had not, on the former
trial, made certain statements, and commenced to read from
the paper in my hands the language that I proposed to ask
them if they had not used. This was objected to by witness,
acting also as counsel for the plaintiff, that the testimony was
given in another case and was not evidence in this, and that
by his signature as attorney he was not bound. We explained
to the court, that we did not offer the statement in evidence,
but that we desired to read certain portions with a view to
question the witness as to the facts and his former statement
of them. The court held that we could not read from the
former statement for any purpose whatever.

II. I can ask a witness if he did not write certain things in
a letter or state certain things in an affidavit, and read from
the letter or affidavit the language he is supposed to have used.
( 1 Greenl. on Ev., secs. 462, 463, and cases cited; 1 Stark. on
Ev., 176; Neill *v.* Keese, 5 Tex., 23.)

III. When one party introduces and reads part of a letter

or other writing, or part of a record or other proceeding, or any part of a conversation, his adversary has the undoubted right to introduce the whole letter, writing, record, or conversation relating to the same subject. (Guilford *v.* Love, 49 Tex., 715; Lynch *v.* Baxter, 4 Tex., 447; Phillips *v.* Green, 5 T. B. Monr., (Ky.,) 344; Greenl. on Ev., secs. 218, 283, 527; Stark. on Ev., side pp. 294, 295.)

IV. Where the title to property is in dispute, a sale thereof can only be ordered by the court on petition of the assignee, after notice to the adverse claimant, as the judge shall direct, and then the titles of both claimants pass under the sale, and the funds remain in the hands of the assignee subject to the order of the court on final adjustment of the conflicting claims. (Bankrupt Act, sec. 25; U. S. Rev. Stats., sec. 5063; 1 N. B. R. R., 238; 14 N. B. R. R., 73–82; Bump on Bank., pp. 179, 569.)

V. A purchaser of land under lien of a judgment takes it subject to the lien, and if the land be sold in satisfaction of the lien, and there be a surplus after satisfying the lien, the surplus after satisfying the lien goes to the owner of the land at the time of the sale, and not to the judgment debtor. (1 Iredell Law Reps., 294; 4 Id., 12; 1 Wend., 259; 5 Johns. Ch., 235; 12 Rich., (S. C.,) 145.)

Surplus proceeds arising from a judicial sale of land are distributed as real estate to the parties entitled to receive it. (Mays *v.* Lewis, 4 Tex., 38; Ackerman *v.* Smiley, 37 Tex., 215; 4 Kent's Comm., p. 98.)

VI. The law requires the utmost fairness in making judicial sales, and if the purchaser enters into any agreement or combination whereby free competition in the bidding is prevented, or whereby the property brings less than it would otherwise have brought, he is guilty of fraud, and no title passes under his purchase. (James *v.* Fulcrod, 5 Tex., 512; 19 Tex., 420; Freem. on Ex., secs. 93, 297, 298; Story on Ag., 139, 140, 496; Story's Eq. Jur., sec. 293; Kerr on Fraud, p. 44; Rorer on Jud. Sales, secs. 94, 95, 96.)

VII. We maintain that, under section 25 of the bankrupt act, the register could not order the sale of this land, but that the order must be made by the court, at a regular term, on the petition of the assignee, and after notice to the adverse claimant. In support of which view, I refer the court to the following authorities: U. S. Rev. Stats., sec. 5063; 14 N. B. R. R., 73–82; 1 Id., 238, 249.

VIII. Instead of determining, as the judge did, that the sale was made by the order of the judge in the court, he should have either excluded the record altogether, or have charged the jury that from the date of the order it could not have been made by the court. This court and the District Court are both bound to take judicial notice of the public acts of Congress, and hence, bound to take judicial notice of the time of the opening and holding of the Federal courts throughout the country. The judge, then, was bound to know—and, more, he did know; for the statute was produced and read—that at the date of this order of sale the District Court of the Western District of Texas was not in session at Tyler, but was in session at Austin, and that no term could be held at Tyler until the first Monday in November, 1875. (Rev. Stats., sec. 512; 28 Tex., 452; 21 Tex., 164; 34 Tex., 35; 31 Tex., 576; 27 Cal., 168; 17 Ala., 229; 19 Grat., 284; 31 Ala., 689; 30 Ill., 279; 8 Ala., 303; 19 Ind., 401; 50 Ala., 102; 2 Sawyer, 482; 1 Greenl. on Ev., secs. 6, 49; Phil. on Ev., note 429.)

The register had no lawful authority to make the order; hence it is that the order was null and void for the want of jurisdiction, and a sale under it passed no title, and its validity may be questioned anywhere. (1 Tex., 244; 21 Tex., 367; 20 Tex., 303; 22 Tex., 479; 4 Tex., 399; 35 Tex., 345; 7 Kan., 417; Freem. on Judg., secs. 116–120; Rorer on Jud. Sales, sec. 123.)

IX. The judgment is also void for want of service. Section 25 of the bankrupt law requires notice to be given to the adverse claimant. (4 Tex., 101, 139; 9 Tex., 356; 13 Tex., 126; 7 Tex., 573.)

X. If the register had no authority to order the sale, certainly he could not approve it. This question, in another form, was up at the last Austin Term of the Circuit Court, and Mr. Justice Bradley, sitting with Judge Duval, held that a sale could only be confirmed by the authority that ordered it to be made. I regret not being able to furnish the opinion. (Rorer on Jud. Sales, sec. 2.)

XI. Perry, as sheriff, had no right to take the draft in payment of the judgment. (Harris v. Ellis, 30 Tex., 7; Mitchell v. Hockett, 25 Cal., 538; Tobey v. Barber, 5 Johns., 68; Freem. on Ex., secs. 300, 443.)

Snediker, the evening before, may have agreed to take the draft in absolute payment, but unless he went further, and did take it, or authorized Perry to do so, or unless he ratified Perry's act in taking the draft, the executing and delivering of the draft to Perry did not satisfy the judgment. Snediker may have agreed to take the draft the evening before, but the promise being without consideration, could not have been enforced. And if Dial drew the draft according to agreement, and tendered it to Snediker or his agent, unless it was then and at that time accepted as payment, or afterwards, it did not amount, in law, to an accord and satisfaction; and unless the draft was paid, the judgment remained unsatisfied. (English v. Reid, 55 Ga., 240; Mitchell v. Hockett, 35 Cal., 543; Tobey v. Barber, 5 Johns., 68.)

XII. The evidence disclosed that Dial had sold the land after the judgment and before the sale, and the sale being to foreclose the lien of the judgment, Dial was not entitled to the surplus proceeds of the sale after the judgment was satisfied, but such surplus belonged to Collins, the owner of the land. (1 Iredell Law Reps., 249; 4 Id., 12; Will. Eq., p. 445; Freem. on Judg., sec. 400; Freem. on Ex., sec. 447.)

XIII. Unless Collins released the payment of this surplus, the terms of the bid were not complied with, and the purchaser acquired no title to the land. (1 Iredell Law Reps.,

249; 4 Id., 12; Freem. on Judg., sec. 400; Freem. on Ex., sec. 447.)

XIV. If Dial, McKay, Lane, Snediker, and Perry, or any of them, made an agreement by which $2 per acre was to be cried publicly as the bid of McKay at the sale, while, in fact, the bid was only to be the sum due on the Patrick judgment, such an agreement was a fraud on the rights of Collins, the land owner, and had the effect of hindering competition in bidding, and the sale was vitiated thereby. (5 Tex., 512; 19 Tex., 420; Freem. on Ex., secs. 293, 297, 298; Story on Ag., sec. 139; 1 Story's Eq. Jur., sec. 293; Kerr on Frauds, sec. 44; Rorer on Jud. Sales, secs. 94–96.)

XV. At a sheriff's sale, the bid is the sum the bidder offers for the property and that is cried at the sale as the bid. And the sheriff can lawfully make no agreement with the bidder, by which one sum is cried as the bid and a smaller sum be the true bid; and such an agreement between the sheriff and the bidder is calculated to hinder honest competition at the sale, and is a fraud that will vitiate the sale. (Rorer on Jud. Sales, sec. 91; Freem. on Ex., sec. 297, and authorities last above cited.)

XVI. Before the sale by Perry passed title to Scruggs under the bid of McKay, the terms of the sale must have been complied with; and unless the entire sum bid at the sale, that is to say, $2 per acre, or $1,736 for the entire tract, was paid, or released by the parties entitled to receive it, the sale passed no title. (Paschal's Dig., art. 3786; 20 Tex., 306; Freem. on Ex., sec. 300; Rorer or Jud. Sales, sec. 134.)

XVII. If Dial purchased, he having after the rendition of the judgment sold the land to Collins, such purchase inured to the benefit of Collins, Dial being by his deed bound to make the title of Collins good. He could not purchase, except for the benefit of Collins, any claim to the land that existed on the 1st of March, 1863, when he sold to Collins. (4 Tex., 38; 37 Tex., 116; 6 How., 284; Sugd. on Vend., 690; 2 Wash. on Real Prop., sec. 31.)

*McKay & Mabry,* for appellee.

BONNER, ASSOCIATE JUSTICE.—In this case there are twenty-nine errors assigned. We have given them a very patient and careful consideration. To present them all in detail, would extend this opinion to great length without corresponding benefit. Hence we discuss but the two upon which we consider the case virtually depends, and briefly announce our conclusions upon the most material of those remaining.

Both parties claim under W. H. Dial as a common source of title.

It is contended by appellants, who were defendants below, that two of the links in plaintiff's chain of title were defective; first, that derived under the execution sale by Sheriff Perry to the original plaintiff, James B. Scruggs; second, that derived under the bankrupt sale by W. G. Cain, assignee of Scruggs, to the present plaintiff, J. W. Davenport.

I. It is claimed by appellants that this execution sale was void by reason of an agreement between the sheriff, the defendant in execution, and the purchaser, that whatever might be the bid in excess of the amount due on the execution, the same should be satisfied by payment of this last-named amount; and further, that the sale was void because the full amount of the bid was not paid and the sheriff's deed was not delivered.

That such an agreement was made, is not denied; and that as between proper parties it would be such fraud, in law, as, without regard to the fraudulent intent in fact, would avoid the sale, we have no doubt.

It is not pretended that the excess between the amount due on the execution and that actually bid, being several hundred dollars, was ever in fact paid; the contest under this issue being as to an alleged payment in the draft of W. H. Dial, the defendant in execution, for the sum of $304, the difference between the cash payment on the bid and the amount due on the execution

None of those, however, who were interested at the time of the sale, are made parties to this suit or heard to complain.

The plaintiffs in execution, Snediker and Cole, (and if they were not the true owners thereof, it does not appear to have been known to the bidders,) did not seek by motion or otherwise to set aside the sale, and, indeed, could not have done so, if, as found by the jury, they accepted the draft for $304 in satisfaction of the execution. The defendant in execution, W. H. Dial, to whom ordinarily under the statute (Paschal's Dig., art. 3777) the excess over the amount of the execution should be paid, is estopped, as he was a party to the transaction; and J. M. Collins, who bought from Dial subject to the judgment lien, is not before the court and does not complain. That he, by proper proceedings, could have set aside the sale, or, if he acquiesced it, by due notice to the sheriff of his title, could have recovered the excess of the bid over the amount due on the execution, would seem clear. The sale was voidable only and not absolutely void, and unless set aside by a proper party would be binding. The failure of Collins to assert his rights would not authorize a stranger to the proceedings to assert them for him. (Hicks *v.* Perry, 7 Mo., 346; Freem. on Ex., sec. 305.)

The title in Collins was subordinate to the judgment lien of Snediker and Cole, and was not such an independent, superior outstanding title as would, under the circumstances, avail the defendants in this suit.

We are of opinion that appellants, who claim title by a subsequent execution sale under this same judgment, have not such interest as that they can, in any event, complain of the failure to pay the excess of the bid over the amount due on the execution, and could complain only in the event that there was a failure to pay the $304 difference between the cash payment and the remainder due on the execution; that is, that they could complain in the event only that the prior execution was not satisfied, and hence that there was authority to issue the subsequent execution under which they claim.

The testimony was quite conflicting as to whether the draft for $304 was received in full satisfaction of the remainder due on the execution, and as to whether, in fact, the sheriff's deed was delivered. We are of opinion that the legal propositions arising from the evidence upon these issues were substantially submitted in the charge of the court, and that there was not such a preponderance of testimony for appellants as would authorize us to set aside the verdict of the jury in favor of appellee.

We do not think that the judgment should be reversed for the alleged error that witness Perry was not permitted to testify that Snediker, one of the plaintiffs in execution, stated to him that he had not agreed to take the draft of Dial in payment of the judgment.

It does not affirmatively appear that this was a part of the same conversation testified to by witnesses McKay and Dial; and, besides, witness Perry swore positively that he met the parties in the settlement at which the draft was taken in his capacity as sheriff, and not as the agent of Snediker, and that he had no authority to take anything but money in payment of the execution.

II. It is contended by appellants that the sale by W. G. Cain, assignee in bankruptcy, to plaintiff Davenport is a nullity.

Under this, appellants submit the following two leading propositions:

"Where the title of property, real or personal, is in dispute, at the date of the bankruptcy, between the bankrupt and a third person, it does not pass into the hands of the assignee, nor does he acquire title thereto under the deed of assignment. Only the title to such property as the bankrupt has in possession, and is surrendered by him, passes under the assignment, and the register has no authority to assign the title to other property.

"Where the title to property is in dispute, a sale thereof can only be ordered by the court on petition of the assignee, after

notice to the adverse claimant, as the judge shall direct; and then the titles of both claimants pass under the sale, and the funds remain in the hands of the assignee subject to the order of the court on final adjustment of the conflicting claims."

By sections 5044 and 5047 of the Revised Statutes of the United States, by virtue of the adjudication in bankruptcy, the appointment of an assignee and the conveyance to him of all the estate, real and personal, of the bankrupt vests in the assignee, including, among other designations of property of the bankrupt, the following: "All his rights of action for property or estate, real or personal, and for any cause of action which he had against any person, arising from contract or from the unlawful taking or detention or injury to the property of the bankrupt."

This is sufficiently comprehensive to pass a right of action to land in dispute and held in adverse possession. (Notes to Bump on Bank., 9th ed., title WHAT PROPERTY VESTS IN THE ASSIGNEE, and authorities cited.)

It has been decided that the assignment vests the property in the assignee, although it was not placed in the schedule of the bankrupt. (Bump on Bank., 9th ed., 484, note, citing Holbrook *v.* Coney, 25 Ill., 543; Burton's Administrator *v.* Lockert's Executors, 9 Ark., 411; Jewett *v.* Preston, 27 Me., 400.)

It has been held by this court that the mere fact that land was in the adverse possession of another would not invalidate a sale otherwise good. (Carder *v.* McDermett, 12 Tex., 546; Austin *v.* Dungan, 46 Tex., 246.)

Under section 5046 of the Revised Statutes of the United States, the assignee has the same right, title, power, and authority to sell, manage, and dispose of the property and estate as the bankrupt might or could have had if no assignment had been made. (Bump on Bank., 9th ed., 167.)

It is believed that, under the bankrupt act and in practice, there is a distinction as to the effect of a sale by the assignee, when made of the bankrupt's interest only, or a sale subject

to incumbrance, and a sale of both the interest of the bankrupt and an adverse claimant, or a sale free of incumbrance.

In the former, the adverse claimant need not be made a party, and his interest is not affected by the sale, the purchaser simply taking such title as the bankrupt had; in the latter, the adverse claimant must be made a party, and the purchaser takes the title of both parties, and the proceeds are held in place of the property sold.

To hold that a sale by an assignee would be void even as to the interest of the bankrupt, unless the adverse claimant was made a party to the proceedings of sale, would, we think, not be sound on principle, would unnecessarily restrict the powers of the assignee given by the statute, and would impair the validity of many titles to land which passed through the assignee, where, from want of knowledge of the adverse claimants, or other causes, they were not notified.

If, by reason of this want of notice to adverse claimants, the sale was not made to the best advantage of the estate, the creditors and others directly interested might object; but it is not believed that the adverse claimant whose rights could not be affected by the sale can complain. It could not be material to him whether the adverse interest was owned by the assignee or by some one else. (Ray *v.* Norseworthy, 23 Wall., 128.)

Concede that an adverse claimant is required to be made a party to an order of sale under section 5063 of the Revised Statutes of the United States, in order to divest his title, and that this order can be made only by the District Court in session, yet we are not prepared to say when the interest of the bankrupt's estate only is sold by order of the register, and the sale approved by him, the application not having been contested, that the sale would be a nullity.

So far as we are advised, it was the practice to order sales as was done in this case, and the bankrupt act seems to contemplate that registers have power to make all uncontested orders and directions, in the administration business of the

court, which by the act are not required to be made, done, or performed by the District Court.   (U. S. Rev. Stats., sec. 4998; Gen. Orders in Bankruptcy, No. 5; Bump on Bankruptcy, 9th ed., 74.)

If, however, the assignee had the general authority to sell at public auction the interest of the bankrupt, it is not believed that such sale would be void because he may have obtained an order of the register to make the same.   A mistaken recital of the source of power would not invalidate the act if the power in fact existed.   (Hough *v.* Hill, 47 Tex., 153.)

As the plaintiff introduced a part only of the proceedings in the bankruptcy of James B. Scruggs, the defendants, by a familiar rule of evidence, had the right to introduce the remainder; and if, under the view we take of the question, the excluded part had not been immaterial as affecting the rights of the defendants, the action of the court in excluding it would have been error sufficient to reverse the judgment.

The above disposes of the most material and controling questions in the case, and virtually of such errors assigned as arise out of the same.

That the witness H. McKay was permitted to testify generally as to his knowledge of the matters in issue, without special interrogatories to each point, was, we think, under the circumstances, not error.   As a rule of practice it would prevent the objection so often raised, that a question is leading.   If the witness should attempt to give illegal testimony, this could be prevented by objection; or if given, it could be excluded on motion, as is often done.

Neither do we think that there was error in not permitting counsel for defendants to read from the statement of facts the testimony of the witnesses McKay and Dial, taken in another cause, as the basis for interrogatories to them as to what was their evidence in that cause.

It would not be proper to read such statement to the jury as a basis to propound interrogatories to impeach the witness, and if offered for any other purpose would be but hearsay.

Such practice as contended for would have a tendency to mislead the jury, and it is not necessary to the ends of justice that it be resorted to, as the party has the right, without producing the written evidence, to ask the impeaching questions, and may use it as a private memorandum for this purpose.

It was in the discretion of the court to permit the plaintiff to read the execution in evidence after the argument of counsel had commenced and before the same had closed, and this is often permitted in practice. This discretion would not be revised unless the defendants had been prejudiced thereby, as when, in consequence of the failure to introduce the evidence at the proper time, they were not prepared with rebutting or explanatory testimony, or were not allowed to comment in argument upon the evidence after it was introduced. The bill of exceptions in the case, however, does not show that the defendants were, from these or other reasons, prejudiced in fact by the ruling of the court.

To have entitled the defendants to exemption from pay for "use and occupation" under article 5306 of Paschal's Digest, they must have proven, both that they paid the taxes on the land, and that the plaintiff failed to pay the same. They proved the latter, but the evidence shows that the defendants themselves failed to pay the taxes for two years after their occupancy.

There being no apparent error sufficient to reverse the judgment, the same is affirmed.

AFFIRMED.

[Opinion delivered December 2, 1879.]