CROZIER, RHEA & CO. v. CARR AND ANOTHER.

Where there was a deed of trust from A to B to secure the payment of a sum of money to C, with a power to sell, and C and D made a contract in writing by which they agreed that D should purchase the property at the trustee sale, and that C should take the notes of D, at four months, it was held that the contract was invalid for want of power in the contractors.

See what is said in this case respecting contracts which tend to lessen competition at public sales.

Where a seal is not necessary, the use of a seal by an agent whose authority is not under seal, will not vitiate the contract.

Appeal from Galveston.   The appellants sued the appellees for a breach of the following contract, a copy of which was attached to the petition:

STATE OF TEXAS,   } This indenture made and entered in-
County of Galveston. } to this sixteenth day of May in the year of our Lord, one thousand eight hundred and forty-eight, between Crozier, Rhea & Co. of the city of Galveston of the one part and John Carr of the county of Polk and State aforesaid, of the other part;—Whereas the said Crozier, Rhea & Co., now hold a deed of trust upon a certain steamboat or hull of a steamboat, built by Thomas McDonald and now lying at the landing at Smithfield, which deed of trust is for the sum of five hundred and 47-100 dollars (together with costs of carrying said trust into execution,) which said sum is due on the 26th day of May instant; and whereas the said McDonald became indebted to Thomas F. McKinney, John Carr and others, in the sum of about four thousand dollars for materials, engine and labor in constructing said boat; now this indenture witnesseth that the said parties hereto have agreed that the said Carr and McKinney shall purchase the said boat at the trustee sale, and that Crozier, Rhea & Co. shall take the notes of said Carr and McKinney in four months time from the day of sale, with the express understanding and agreement, that in the event that the boat should not make a suffi-

ciency of money to pay the claim of said Crozier, Rhea & Co., then and in that case the said Crozier, Rhea & Co., hereby agree and bind themselves to allow said McKinney and Carr a further extension of four months for any balance yet remaining unpaid; and the said McKinney and Carr agree to take charge of said boat and to complete her as early as they conveniently can, and also agree to execute a deed of trust to M. B. Menard, as trustee, upon said boat, to secure the payment of the said sum owing to said Crozier, Rhea & Co. In witness whereof the parties hereto have hereunto set their hands and scrawl seals this the day and year first herein above written.

JOHN S. RHEA,     [L. S.]
     for CROZIER, RHEA & Co.,
JNO. F. CARR,     [L. S.]
THOS. F. McKINNEY.   [L. S.]

The breach alleged was the failure of the defendants to purchase, whereby the boat sold for only one hundred dollars, and McDonald being insolvent, the plaintiffs lost their debt. The grounds of the defendants, demurrer were; no cause of action shown; no mutual obligation in the covenant sued on; Crozier, Rhea & Co., not bound, therefore no right of action against defendants; it was the covenant of John S. Rhea, and not of plaintiffs; covenant was for an illegal object. The demurrer was sustained.

*O. C. & R. K. Hartley*, for appellants.

*Jones & Ballinger*, for appellees.

LIPSCOMB, J. The appellants were the creditors of one McDonald, who to secure the payment of such indebtedness, made and executed a deed of trust to Michael B. Menard for a steamboat, then being constructed on the Trinity river, stipulating that on failure to pay the amounts when due, the trustee should proceed to sell the said property to the highest bidder, who may be ready to pay for the same, on giving notice by publica-

47

tion in the Galveston News, thirty days, of the time and place of such sale; and the proceeds thereof, or so much thereof as may be required, to pay the specified debts in the deed mentioned, or so much thereof as may at that time remain due and unpaid, and the balance after such payments and payment of costs and fees to be paid over to the said McDonald. The covenant sued on was made by and between the appellants and Carr and McKinney, on the 16th day of May, A. D., 1848. It sets out that the appellants now hold a deed of trust upon a certain steamboat or hull of a steamboat now lying at the landing at Smithfield, which deed of trust is to secure the payment of five hundred dollars, with cost of carrying said deed of trust into execution, which sum is due on the twenty-sixth day of May instant, and that whereas the said McDonald is indebted to the said Carr and McKinney and to other persons the sum of four thousand dollars for materials and engine and labor for said boat, it is agreed that the said Carr and McKinney shall purchase in the said boat at the trust sale; and the appellants, Crozier, Rhea & Co., agreed that they would take the notes of the said Carr and McKinney, at four months, with the express understanding, that if the profits of the boat did not amount to enough to pay the debt, Crozier, Rhea & Co. were to extend the time of payment four months for the balance; and that McKinney and Carr were to take charge of the boat and have it completed as soon as it could conveniently be done.

The breach, alleged in the petition, is that the appellees, Carr and McKinney, had failed to purchase in the boat at the trust sale, by which failure the boat had been sold, at trust sale, on the 26th day of May, A. D., 1848, for a small sum, i. e. one hundred dollars; and that plaintiffs were then and there ready to comply with their covenant, but defendants failed to purchase in the boat, whereby the plaintiff had been damaged.

The defendants demurred and answered, to which there was a replication; but as the case was decided and went off on

the demurrer, it will not be necessary to notice anything but the petition; if the matters therein set forth constitute no ground of action, the demurrer was properly sustained.

The covenant upon which this suit is founded is somewhat peculiar, and differs, in its features, from any one that has heretofore been considered by this Court. But there are certain principles of law governing all contracts, that when applied to this, will enable us, it is hoped and believed, to give its legal effect, or in other words to determine satisfactorily on its validity.

One of the rules laid down by Comyn on Contracts is, that a contract or agreement must be unlawful at the time of making it, otherwise it cannot be set aside; for it is said the law knows of no contract but what was good or bad at the time of the contract made. It cannot be one or the other according to a subsequent contingency. (1 Comy. Con. 31.) The same author (same vol. 28) says the consideration must be such as the party to whom the promise is made has power to perform or cause to be performed.

To apply these rules to the covenant that the defendants shall purchase in the steamboat "at the trust sale." Had either of them, the plaintiffs or the defendants, at the date of this covenant, the power to stipulate for such purchasing in the property referred to? It seems clear that they had not: because it did not belong to the plaintiffs, but was conveyed by McDonald to Menard, coupled with a trust for the security only of the plaintiffs; and McDonald reserved the right to pay off the debts intended to be secured, and then the property reverted to him again, as it would have discharged the trust, the object of the deed. And by its terms, McDonald had the right at any time before the sale, to prevent a sale, by the payment of the money, the non-payment of which was the contingency on which there could be a sale at all. The covenant being void at the time of its execution, in law, could not afterwards become valid, by the happening of the contingency that the money was not paid, and a trust sale took place.

· Again; the contract seems, from its terms, to have been for the benefit of the plaintiffs only, as the plaintiffs surrendered by it not a title of the security they before held. They retained the lien on the property, and if the defendants failed to purchase in the property, the plaintiffs being the *cestui que trust* could have had the full advantage of its value. If they failed to secure themselves, it was their own fault. They do not allege that they were deceived by the covenant of the defendants, so as not to attend the sale. So far from so doing, they allege that they were present at the sale, and ready to execute their part of the covenant. They have shown therefore that they have sustained no damage, that they might not have avoided, and therefore not entitled to recover damages.

There is another objection that has been raised to the validity of the contract, that it was intended to be a ·fraud upon other persons, having an interest involved, by depreciating the price for which the property would sell. It was the interest of McDonald as well as his creditors not provided for, that it should sell for its full value; and if this contract was designed to lessen the price for which it sold, it was void. There is no doubt but the principle contended for is true. See Fulcrod v. James, 5 Tex. R. 512, where this doctrine is discussed, and the authorities collated and reviewed. The only question is, whether this was the object and tendency of the contract. It would seem that both the defendants and plaintiffs would be benefitted by the property selling at as low a price as possible. This interest of the defendants is manifest; and the interest of the plaintiffs, though not so clear, would seem to tend the same way, as the lower the price for which the purchase was made, the sooner could they demand and be entitled to payment out of the earnings of the boat; and the fact being known that an arrangement about the sale had been made would have a tendency most likely to lessen competition, by keeping off bidders. We do not, however, propose to rest our decision on this point; but on the views before expressed; although it would seem that this point was well taken.

We believe there is no soundness in the objection taken to the covenant, that it being signed by Rhea for the firm, he could not bind the firm because it was under seal. He was contracting for the firm; and if there had been no other fault in the contract, it would have enured to the benefit of the firm. And he could contract without a seal, and the addition of the seal would not have vitiated such contract.

There is another objection presented by the record, that seems to be fatal to the plaintiffs' right of action. The covenant shows that the money secured by the lien on the steamboat, fell due on the same day that plaintiffs allege the sale under the trust deed was made; which was thirty days sooner than it could lawfully have been made, according to the terms of the trust deed.

Judgment affirmed.


PETITION FOR RECONSIDERATION.

The appellants would respectfully request the Court to again look into this case. A contract is void where an unlawful or impossible thing is contracted to be done: and a contract is not binding if it be made without consideration. The first conclusion of the Court appears to be that the contract in this case, was to do an impossible thing. But this can hardly be. To undertake to purchase at a public sale, is certainly not to undertake to do an impossible thing, either in the eye of the law or in fact; although, if the contract should receive a literal construction, it might prove to be a very unprofitable one. Perhaps the proper construction of such a contract would be, that it is a contract to bid a reasonable price, and no more. However that may be, there can be no doubt that the undertaking is not impossible. The contract was precisely the same in Fulcrod v. James, 5 Tex. R. 512. The statement of facts, in that case, which was prepared by his Honor the Chief Justice, reads " that it was expressly understood between the said " defendant and the petitioner, how the lot should be divided;

" that the defendant should have that part of the lot adjoining
" his residence, and that in consideration thereof, he would
" bid off said lot for the plaintiff." In a case which is re-
ported in the American Law Register for November, 1853,
which we hand to the Court, Wright v. Shumway, and which
has several points of resemblance to this case, the Court says,
" But even if the land was to have been purchased by the
" Shumways at a public sale, there is nothing in this deed,
" (by which the Shumways contracted to purchase the land
" from the United States and mortgage it to the plaintiffs,) to
" prevent competition in bidding, or to stop these plaintiffs
" from becoming the purchasers ; but on the contrary, the cov-
" enant on the part of the Shumways to purchase the land
" and then to mortgage it, might have induced competition,
" and required them to bid it off at a much higher rate than
" the minimum price." It does not appear to have occurred
to the Court, that in that aspect, the contract would have been
to do an impossible thing. Is it not manifest, that a contract
to purchase at private sale, is as liable to the objection now
under discussion, as a contract to purchase at public sale ?—
There is no executory contract that may not be made to de-
pend on more or less contingencies, express or implied. Of
course, if the sale had not taken place, the defendants would
not have become liable for a failure to purchase.

This part of the opinion of the Court reads, too, as if it had
been supposed, that the consideration of the contract of the
defendants, was the undertaking of the plaintiffs that they, the
defendants, should become the purchasers of the boat ; which
it was not competent for the plaintiffs to undertake. We con-
fess that if this were the contract, there would never have been
any beginning to the case, i. e.: if *we* should contract that
*you* should become the purchaser. Such is not the import of
the contract. It is rather simple than otherwise. Crozier,
Rhea & Co., having supplied McDonald with means and
credit, to aid in the construction of a steamboat, took a deed
of trust, or mortgage with power to sell, upon the boat, to

secure themselves. McDonald failing to pay, Crozier, Rhea & Co., were constrained to proceed under the power to sell. Fearing that the boat might not sell for enough to pay them, and not wishing, themselves, to purchase it, they made this contract with McKinney and Carr, who also had claims against the boat, which they were anxious to save, that if they, McKinney and Carr, would buy the boat at the approaching sale, which was then advertised, they, Crozier, Rhea & Co., would take their notes at four months, for so much of the purchase money as their claims amounted to, instead of exacting cash: and, in a certain event, they contracted to grant still further forbearance. Now is it not evident, that the consideration moving from Crozier, Rhea & Co., to the defendants, was the undertaking on their part, to receive promissory notes at four months instead of cash, and in a certain event to still further forbear? And is it not equally clear that the object of the plaintiffs and the effect of the contract, was to enhance the price bid? We respectfully submit, that when a party complains of another for failing to perform a contract, it is no sufficient answer to tell him that he might have performed it himself, and it would have been so much saved to him.

It is submitted that the forgoing shows, that the contract was not " for the benefit of the plaintiffs only." What is next said may be correct or not; it respects the measure of damages. We expect to satisfy the Court, if we can have a trial, that we were damaged as alleged in our petition. The case is now on demurrer to the petition.

The next point (as to the lawfulness of the contract) is fully met by the view of the case presented in the second paragraph above. Again; the language of the opinion is precisely applicable to the case of James v. Fulcrod. In that case, " both " the defendant and plaintiff would be benefitted by the pro- " perty selling at as low a price as possible." So it is in all cases of agreements to purchase jointly. But so it was not here. If the Court will look again at the contract, they will see that it made no sort of difference to Crozier, Rhea & Co.,

how much the boat sold for. If it had sold for ten thousand dollars to McKinney and Carr, the additional forbearance would have been due them, only in case the boat did not make a sufficiency of money to pay the claim of Crozier, Rhea & Co., within the first four months. Need it be said, that that fact would be independent of the price bid at the sale. The Court say the decision is not rested on this point; and we notice it merely to endeavor to remove any doubts in the mind of the Court.

In conclusion, the last point, which is stated by way of fortification of the previous ground, rather than as sufficient ground itself for the affirmance of the judgment, would be fatal, if the plaintiffs were endeavoring to collect from the defendants, a sum of money not yet due. The material allegations in the petition are that the defendants, for a valuable consideration, undertook to purchase at an approaching sale; and it seems as if the sale was to take place on the same day on which the money fell due—to take place, too, after thirty days notice. Who will say that the contract of Crozier, Rhea & Co., with McDonald might not have been so drawn? Is it not a very common occurrence for a party to create a power to sell to pay debts or charges? And where is the objection to providing so that the sale shall take place and the proceeds be ready to pay over on the day when the debt or charge falls due. The nature of the contract of Crozier, Rhea & Co., with McDonald was not disclosed by the petition, nor was it necessary that it should be. A demurrer does not raise any objection to the validity of the sale. It would have been matter of defence, if the sale had not been legally made. The fact, however, is, that there was a mistake in the contract of these parties, as to the time when the claim against the boat fell due. It is a mistake of no consequence. The deed of trust will be found in the transcript, commencing on page 17. It appears from it, that the claims were dated January 20th, at ninety days, due about the 20th April instead of the 26th of May. All of which is respectfully submitted.

O. C. & R. K. HARTLEY, for appellants.

LIPSCOMB, J.  I have considered the petition for a rehear-ing, and see nothing in it to change the opinion already expressed.  The case recently decided and reported in the Philadelphia Law Magazine, I do not think militates against our opinion, but is in my opinion clearly distinguishable from this. In that case, the sale to be made by the government of the United States of the land, was not a forced sale; and the United States had protected herself against any injury from such agreement, by providing for a minimun, at which the sale should be made.  Not so with the party in this case, who had conveyed his property in trust to secure the payment of his debt.  There may be other points of diffiernce, that cannot now be noticed for want of time.

Petition overruled.