JOHN J. BABCOCK *et al.* *vs.* WILLIAM R. WELLS *et al.*

WASHINGTON—FEBRUARY 6, 1903.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Mortgage Sales.  Notice of Sale.*

A mortgage sale is not void because advertised "By order of the mortgagees" instead of "By the assignees of the mortgagees."

(2)  *Mortgage Sales.  Notice of Sale.*

The notice of a mortgage sale stated that the sale would be "on the prem-
ises."  The land consisted of three parcels.  A sale was held on each par-
cel, and the holder of the mortgage bid one dollar over and above the
amount due on the mortgage for each of the parcels:—

*Held*, that, as it appeared it was understood by the parties that this con-
stituted but one sale of the property, although irregular, the sale would
not be avoided on this ground.

(3)  *Mortgages.  Foreclosure.*

Foreclosure without sale is a satisfaction of the debt secured only to the
amount of the value of the property foreclosed.

(4)  *Mortgage Sales.  Inadequacy of Price.*

At a mortgage sale the mortgagee refused to state the amount due under
the mortgage, and no such amount was stated at the sale.  The bid by
the mortgagee was one dollar over and above the amount due:—

*Held*, that the court would hear testimony as to the amount due, before
setting aside the sale on the ground of inadequacy of price.

BILL IN EQUITY, on facts set forth in opinion.

STINESS, C. J.  This is a bill to redeem, after a mortgage
sale of real estate, upon the ground that the sale was void.

The original complainants gave two mortgages of their un-
divided two-thirds interest in certain real estate: the first,
dated October 25, 1875, to secure a note of $5,000 on what
is called "Bethel Mill Property;"  the second, on October 24,
1876, to secure the same note, on what is called "Bethel
Plains."  On the last date they also gave a mortgage on ma-
chinery in the mill, to secure the same note.  These three
mortgages were given to Thomas R. Wells, and by him as-
signed to Sylvia E. Salisbury and William R. Wells, respond-
ents.  April 1, 1878, the assignees of the mortgage took pos-
session of the personal property under the last-named mort-
gage, and on August 1, 1878, they sold the real estate under
the two former mortgages.

(1)     The complainant claims that, as the advertisement of the
mortgage sale of the two-thirds interest, August 1, 1878, was
signed "By order of the mortgagees" and not by the *assign-
ees* of the mortgagees, the sale was void.  We do not think
this is so.  After transfer of a mortgage, an assignee is the
mortgagee.

In *Fitzpatrick* v. *Fitzpatrick*, 6 R. I. 64, notice of sale was signed in the same way after it had been assigned, but it was held that the notice was equally effective whether signed or not. *Woonsocket Ins.* v. *American Co.*, 13 R. I. 255, was a similar case, in which the notice was held to be sufficient. There was therefore no defect in the sale upon this ground. See also *Colgan* v. *McNamara*, 16 R. I. 554.

The complainant also claims that the sale of the whole property was invalid, upon other grounds.

(2)   The three parcels of land were sold separately, and the mortgagee bid one dollar over and above the mortgage on each parcel. The complainant claims that the mortgage was satisfied by the bid upon the first parcel, and hence that there was no authority to sell the other parcels.

The testimony shows that the selling by parcels arose from the understanding that, as the notice stated that the sale would be "on the premises," a sale was required on each of the parcels described. It was so done, and the respondents, holders of the mortgages, bid one dollar over and above the amount due on the mortgages for each of said parcels. It is, nevertheless, apparent from the evidence that the making of bids in this way was neither intended nor understood to constitute separate sales, but one sale of all the property, under the notion that because three parcels were described each must be sold "on the premises."

The auctioneer so understood it, as appears by his affidavit, and the complainant was present and made no objection to the mode of procedure. It is also evident that he understood that it was one sale, for this is the charge in his bill. While this mode of proceeding is somewhat irregular, we do not find that it was misleading, or in any way detrimental to the interests of the mortgagors.

(3)   It is further claimed that, as the mortgagees took possession of the personal property given to secure the same note, the retention of the property amounts to a satisfaction of the mortgage debt.

The rule in this State is that foreclosure without sale is a satisfaction of the debt secured only to the amount of the

value of the property taken in foreclosure. *Hazard* v. *Robinson*, 15 R. I. 226.

While there is testimony in this case as to the value of the personal property, it is not of such a character as to enable us to determine whether its value was sufficient to satisfy the debt, and this matter must be left to a special accounting. The complainant also claims that the sale should be set aside for inadequacy of price.

The rule stated in *Galvin* v. *Newton*, 19 R. I. 176, and *Nichols* v. *Flagg*, 24 R. I. 30, is that while mere inadequacy of price is not enough to avoid a fairly conducted sale under a power, it will be considered in connection with other circumstances to determine whether there has been a fair sale.

(4) Among the objections urged against the fairness of the sale we see but one that calls for attention.

The complainant testifies that he asked Wells for a statement of the amount due on the mortgages, which was not given, and it appears that no such amount was stated at the sale.

The respondent argues that this was not necessary, because the complainant knew what was due, and that purchasers would bid according to their opinions of the value of the property.

This would have been true, if the sale had been conducted in that way. The bid made by Wells was not a definite sum for the land, but "one dollar over and above the amount due on the mortgages." How could anyone know what was due on the mortgages? They might know from the records, to which they had been referred in the notice of sale, that the face of the note was $5,000; but they could not be expected to know how much interest was due on the note, nor how much was to be credited thereon for the personal property taken on account of it under the chattel mortgage. If the bids had been so much for the land, the amount due would have been immaterial; or if the amount due had been stated, the bid then would have been equivalent to a bid for the value of the land. As the case stands the value of the machinery may have been small, leaving the amount due on the mortgage so much

as to rebut the inference of an unfair sale; or it may have been enough to satisfy the debt. If a fair amount was realized, there would be no just cause of complaint. For this reason we allow further testimony upon this matter, as well as upon the question of the right of Kenyon and Langworthy to sell under their mortgage as stated in a previous opinion between these parties, reserving decrees upon the merits of the case for further determination.

We do not consider the other objections urged against the sale as important.

*A. B. Crafts*, for complainants.

*Dexter B. Potter*, for respondents.