CALDWELL v. STALCUP et al.   (No. 587.)

(Court of Civil Appeals of Texas.   Amarillo.
March 28, 1914.   On Motion for Re-
hearing, April 25, 1914.)

1. CONTRACTS (§ 5*)—CONSTRUCTIVE CONTRACT
—ATTORNEY'S FEES.

A bank to which notes were indorsed agreed
with plaintiff, an attorney, that he should sue
on the notes and have for his services the 10
per cent. attorney's fees stipulated therein, and
the bank afterwards transferred the notes pend-
ing the suit thereon under an agreement that the
transferee should carry out the agreement with
plaintiff, who agreed to look to the transferee
for payment for his services.   The notes were
afterwards transferred to defendant, who be-
came a party to the suit;  but, before he be-
came a party thereto, he knew that plaintiff had
sued on the notes, and of the agreement under
which he did so.   Defendant procured another
attorney to intervene in the suit for him be-
fore judgment was rendered, agreeing to credit
him with $50 for his services, and the judgment
was taken in defendant's name, instead of in the
name of the bank.   Held, that defendant was
bound, as on a constructive or quasi contract,
to pay to plaintiff the attorney's fees recovered,
after allowing defendant a credit for the $50
paid by him to the other attorney.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 7; Dec. Dig. § 5.*]

On Motion for Rehearing.

2. ASSIGNMENTS (§ 48*)—EQUITABLE ASSIGN-
MENT.

An agreement between plaintiff, an attor-
ney, and the owners of notes by which plaintiff
was authorized to bring suit on the notes in
consideration of the 10 per cent. attorney's fees
stipulated for therein operated as an equitable
assignment of such attorney's fees to plaintiff.

[Ed. Note.—For other cases, see Assignments,
Cent. Dig. § 133; Dec. Dig. § 48.*]

Appeal from Potter County Court; W. M.
Jeter, Judge.

Action by R. E. Stalcup against E. W.
Caldwell and others.   From a judgment for
plaintiff, the defendant named appeals.   Af-
firmed.

J. H. E. Stahl, of Stratford, and Synnott &
Underwood, of Amarillo, for appellant.   Coop-
er, Merrill & Lumpkin and Reeder & Dooley,
all of Amarillo, and M. Cammack, of Strat-
ford, for appellees.

HUFF, C. J.   R. E. Stalcup brought suit
in the justice court against National Bank
of Commerce, the First National Bank of
Stratford, and E. W. Caldwell, for services
rendered under a contract in the case of
National Bank of Commerce v. W. T. Dortch,
in the district court of Sherman county, Tex.,
on a fee for such services, $211.40, with a
credit of $50, leaving balance due of $161.40.
The case was tried in the justice court, in
which judgment was rendered, and, from that
judgment, appealed to the county court, in
which last court judgment was rendered in
favor of R. E. Stalcup for the amount sued
for against the First National Bank of Strat-
ford and E. W. Caldwell, and, in case the
bank should pay the judgment, then in its

favor over against E. W. Caldwell for the
amount so paid, and in favor of the National
Bank of Commerce from which judgment E.
W. Caldwell appeals.

The facts show that T. D. Lipscomb sold to
W. T. Dortch a tract of land, and as part con-
sideration took three notes for the sum of
$800 each.   One of these notes was trans-
ferred to Galbraith-Foxworth Company,
which company placed that note in the hands
of R. E. Stalcup as an attorney to bring suit,
which he did.   Lipscomb was indebted to
the National Bank of Commerce of Amarillo in
the sum of $1,500, and as security he trans-
ferred the other two notes for $800 each to
said bank as collateral security.   After the
indebtedness of Lipscomb fell due, and the
two notes of $800 each held by it were due,
that bank delivered the two notes to R. E.
Stalcup, the attorney and appellee herein, for
the purpose of suit, which he brought.   The
agreement with the bank and Stalcup was
that he should have the 10 per cent. stipulat-
ed for the notes.   Afterwards the two suits,
one of Galbraith-Foxworth against Dortch
and the Bank of Commerce against Dortch,
were consolidated and finally prosecuted to
judgment, which was rendered in 1913, in-
cluding the attorney's fees on all the notes.
However, previous to judgment Lipscomb
made arrangements with the First National
Bank of Stratford to procure money with
which to pay off the note held by the Bank
of Commerce, under an agreement that the
Stratford bank should take the collateral
notes and suit and hold as collateral to the
obligation to it by Lipscomb.   The Bank of
Commerce consented to so transfer the note
on condition that the Stratford bank should
become liable for the attorney's fees therein,
and should carry out its agreement with
Stalcup, and that Stalcup would release it
from further liability on its contract with
him.   The Stratford bank assented to this,
and Stalcup agreed to look to the Stratford
bank.   It appears, also, that service had not
been obtained in the suit on file, and it
was continued for the purpose of service, and
by agreement of parties thereto that the
cases should be consolidated.   It appears
that Lipscomb was also indebted to E. W.
Caldwell for some amount not shown by the
record, and that Caldwell agreed to take the
notes and as part payment therefor credit
Lipscomb's account with same, and that he
should pay the difference between the ac-
count and the value of the notes, which he
did, and that money was paid into the Strat-
ford bank on Lipscomb's indebtedness, and
that bank turned over to Lipscomb the two
notes; Lipscomb agreeing to protect Stalcup
in his attorney's fees.   Caldwell's testimony
is to the effect that at that time he had no
notice that suit had been instituted on these
two notes.   Both notes were past due at the
time Caldwell procured them.   The evidence

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

is sufficient to warrant the court in finding that, before Caldwell made himself a party to the suit then pending, he knew that Stalcup had charge of these notes and had sued thereon. Caldwell's testimony shows that he employed one Rudolph, who was an attorney, and who was indebted to him, for the sum of $50, to intervene in the suit then pending in his behalf, and that Rudolph should have credit on his account with Caldwell for that amount. Rudolph, before judgment was rendered, appeared for Caldwell and intervened in the suit. Stalcup agreed with Rudolph that he would give Rudolph $50, or credit his fee with $50, the amount Rudolph was to receive, and the judgment was then taken in the name of E. W. Caldwell, instead of the Bank of Commerce, foreclosing for the amount sued for, together with attorney's fees on the land. The testimony is sufficient to show that Stalcup never in fact relinquished the control and possession of the notes, and that the Bank of Commerce and the Stratford bank and Lipscomb recognized his right to control these notes.

[1] Under the facts of this case, we think that the agreement entered into between the Bank of Commerce and Stalcup had the effect to transfer him 10 per cent. of the principal and interest due on the notes as attorney's fees. Suit was brought and prosecuted to judgment under that agreement. The Stratford bank took an assignment of the note and suit with the express agreement that the 10 per cent. should be paid to Stalcup as his compensation. Lipscomb procured the notes retransferred to him under the same agreement. The suit thereon remained on the docket under all the transfers. Caldwell purchased the notes, he says, without actual notice of the suit, but after they were due. The evidence is sufficient to support the finding of the court that long before judgment was obtained he recognized Stalcup as an attorney in the case. Thereafter he had himself made a party to that suit, and a judgment was taken in his name, instead of the name of the National Bank of Commerce, in whose name it had been prosecuted up to that time. Under that suit Caldwell procured judgment for the 10 per cent. as attorney's fees. These fees, by agreement, and under the service rendered, belonged to Stalcup, and unless, upon some equitable ground, Caldwell is released, he should have paid them over to Stalcup. The Supreme Court has held that a provision of the kind set out in the notes in question is in the nature of an indemnity against the cost of procuring judgment, and, unless they are shown to be unreasonable or unconscionable, the holder of the notes may recover them. Lanier v. Jones, 104 Tex. 247, 136 S. W. 255; Bank v. Robinson, 104 Tex. 166, 135 S. W. 372. Before Caldwell procured judgment he knew that Stalcup had brought the suit and was prosecuting it. Up to that time he had been out but $50 additional as attorney's fees.

Stalcup gave his account credit for that amount so, if he had no notice of the agreement when he purchased the notes, or when he employed an attorney, he was put upon notice that another attorney had been employed to procure the judgment upon these notes before he took the judgment for the full amount of the stipulated attorney's fees as his indemnity, when his costs were in fact only $50. This was a fund to which the two banks looked to pay the attorney's fees, and was the fund for which Stalcup agreed to do the work. We think equity and right is satisfied when Caldwell gets credit for the $50 paid, and that it would not be just for him to appropriate the remainder to his use and leave the Stratford bank to pay this obligation out of some other fund than these fees. Caldwell having appropriated the funds to his use, which, by agreement with parties who then had the right to make the same, belonged to Stalcup, he should be held to pay the Stratford bank in case it has to pay Stalcup. We think this is a constructive or quasi contract (Simpkins on Contracts [3d Ed.] 471) which the law will impose on Caldwell in order that full justice may be done by all parties.

We believe the trial court has correctly decided this case, and it will therefore be affirmed.

### On Motion for Rehearing.

In view of appellant's motion for rehearing, we make the following additional finding of fact:

Stalcup testified: "Mr. Galbraith, for the bank, at the time the notes were placed with me, and later Mr. Bynum, in person, contracted to pay me *the* 10 per cent. provided in said notes as attorney's fees for making the collection."

Mr. Bynum, cashier of the National Bank of Commerce, testified: "We agreed to pay Judge Stalcup the 10 per cent. stipulated in the notes as his fees in the matter. We promised to pay Judge Stalcup the 10 per cent. of the notes for his fees; but the First National Bank of Stratford agreed to take our place, and Mr. Stalcup agreed to it, and to look to the Stratford bank for his fees."

The cashier of the First National Bank of Stratford testified: "Our bank agreed with the National Bank of Commerce that we would assume their contract with Stalcup. Lipscomb had agreed all along that he would pay these fees as he was the person in real interest. I was willing that the attorney's fees should be paid out of the proceeds of the foreclosure, and it was my understanding that the fees were to be paid after the foreclosure was consummated."

[2] We think, under the agreement of the parties, that Stalcup, as an attorney for the collection of the notes in question, was in effect an equitable assignment of the amount due the attorney for such service. Milmo National Bank v. Convery, 8 Tex. Civ. App.

181, 27 S. W. 822. Caldwell, by virtue of this suit and 'the services rendered by Stalcup, in obtaining the judgment, secured 10 per cent. on the amount of the notes, which otherwise he was not entitled to, and which he did not pay for when' he purchased the notes. This 10 per cent. was Stalcup's under the contract, and any sort of diligence or inquiry on the part of Caldwell, when he purchased these notes, would have given him notice of this assignment. We think the case was properly disposed of, and the motion is therefore overruled.