IVES v. CULTON. (No. 1206.)

(Court of Civil Appeals of Texas. Amarillo. June 30, 1917. Rehearing Denied Oct. 3, 1917.)

1. VENDOR AND PURCHASER ⊂⊃242—NOTICE—BURDEN OF PROOF.

In trespass to try title, the burden was upon defendant claiming under a warranty deed from R. to show that the owner of the judgment against R. at the time he recorded the abstract thereof had notice of the unrecorded conveyance to defendant.

2. JUDGMENT ⊂⊃788(1) — CONVEYANCE — PRIORITY.

In the absence of notice, a lien is created by the recording of the abstract of judgment, superior to rights of a purchaser under a prior unrecorded deed from the judgment debtor.

3. ATTORNEY AND CLIENT ⊂⊃104—NOTICE TO ATTORNEY—IMPUTATION TO PRINCIPAL.

That the attorney for a judgment creditor knew of a prior unrecorded deed by the debtor would not, under the principles of agency, bind the judgment creditor.

4. ATTORNEY AND CLIENT ⊂⊃176 — COLLECTION FEES — PROVISIONS OF NOTE—EQUITABLE ASSIGNMENT.

The agreement that attorneys were to have all the attorneys' fees specified in notes, provided they could collect the full amount thereof, constituted an equitable assignment of an interest in the fund realized, or, if not, certainly an equitable lien.

5. ATTORNEY AND CLIENT ⊂⊃104—NOTICE TO ATTORNEY—UNRECORDED DEED.

That attorney who secured judgment had an equitable interest in the fund to be derived therefrom, made him merely co-owner with judgment creditor, so that his knowledge of a prior unrecorded deed could not be imputed to his client.

6. ATTORNEY AND CLIENT ⊂⊃184—LIEN—UNRECORDED DEED—PRIORITY.

An attorney who knew of an unrecorded conveyance by the judgment debtor did not ac-

quire a lien for payment of his interest under an agreement for fees, as against the grantee.

7. JUDGMENT ⊂⊃845—RIGHTS OF ASSIGNEE—LIEN.

Where a client who did not know of defendant's prior unrecorded deed assigned part of the judgment to his attorney who did know, that part of the judgment was superior in the attorney's hands, to defendant's deed.

8. JUDGMENT ⊂⊃801—LIEN—ENFORCEMENT.

If any part of the judgment constituted a valid lien on the land in controversy, such lien could be foreclosed either by execution sale or by decree of foreclosure in a suit brought for that purpose.

9. JUDGMENT ⊂⊃801—JUDGMENT LIEN—FORECLOSURE.

Where part of a judgment constituted a lien against an entire tract of land, a sale under foreclosure of such lien would pass title to the land, at least in the absence of some showing that the land sold for more than sufficient to pay off that part of the judgment which constituted a valid lien thereon.

10. CONTRACTS ⊂⊃130—FRAUDULENT SALE—AGREEMENT NOT TO BID.

Where the purpose of the release of one of the judgment debtors was to induce him not to bid at the execution sale, the transaction was fraudulent at law.

11. TRESPASS TO TRY TITLE ⊂⊃35(2)—PLEA OF NOT GUILTY — COLLATERAL ATTACK ON JUDGMENT.

Plaintiff in behalf of his client secured a judgment against R. and H., an abstract of which was recorded prior to a deed given by R. to defendant to the land in controversy. The land subject to the vendor's lien and not involved in this suit was sold, but, after applying the proceeds, there was a balance due on the judgment. In consideration that H. would not bid at the sale, plaintiff released him from the judgment, plaintiff bidding in the land for his client. Plaintiff's client assigned to plaintiff the balance due on the judgment, and plaintiff caused an execution to be levied on the land deeded to defendant, and purchased the same at the sheriff's sale securing a deed. Held, that defendant sued in trespass to try title could not, under his plea of not guilty, collaterally attack the sale under which plaintiff obtained title, on account of the alleged misconduct of plaintiff in respect to the bidding at the first sale; the sales being voidable.

Huff, C. J., dissenting.

Appeal from District Court, Swisher County; R. C. Joiner, Judge.

Trespass to try title by D. H. Culton against Edgar A. Ives. Judgment for plaintiff, and defendant appeals. Affirmed.

Kimbrough, Underwood & Jackson, of Amarillo, for appellant. Culton & Taylor, of Tulia, for appellee.

BOYCE, J. Appellee, Culton, brought this action of trespass to try title against appellant, Ives, who answered by plea of not guilty. The case was tried before the court, resulting in judgment for appellee for the land in controversy, being one-half section of land in Swisher county, and the case is before this court on exceptions to the judgment of the court; no findings of fact or conclusions of law having been requested.

Both parties claim title through J. D. Raitt—appellant through a warranty deed executed

by Raitt, dated September 16, 1915, an'd filed for record June 13, 1916; appellee through a sheriff's deed made under execution, issued on a judgment against Raitt, an abstract of which was filed and recorded in the ju'dgment lien records of Swisher county, on April 13, 1916, the execution being levied on said property on June 7, 1916, and sale made thereafter. The judgment against Raitt referred to was rendered in a suit brought by one Thomas F. Hagan against said Raitt and Albert G. Hinn on certain promissory notes. It was rendere'd on the 11th day of April, 1916, and was for the sum of $8,219.17, and decreed a foreclosure of a vendor's lien securing the payment of said notes on another tract of land not involved in this suit. Hagan was represented in this suit by Culton & Taylor, the said Culton being the appellee herein, under an agreement for employment by which they "were to have all of the attorneys' fees specified in said notes (ten per cent. of principal and interest due), provi'ded they could collect the full amount of the notes, principal, interest and attorneys' fees." The land subject to said vendor's lien was sold on June 6, 1916, under order of sale issued on said judgment, and the proceeds applied in payment of the costs an'd amount due on the same, leaving a balance due thereon, after said application, amounting to $974.11. After this sale, and prior to the issuance of the execution for the balance, Hagan assigned to appellee Culton the balance due on said judgment in satisfaction of the attorney's fees of Culton and Taylor in said suit, and for services in transacting some other business. Culton caused an execution to be issued and levied on the land in controversy on June 7, 1916, as before stated, which was sold to Culton at the sheriff's sale following, and proceeds of the sale credited on the judgment and sheriff's deed, duly executed, conveying the property to Culton. No testimony was introduced as to whether Hagan, at the time of the filing of the abstract of his judgment, had any notice of the existence of the unrecorde'd conveyance to Ives. Hagan lived in Illinois, and Culton personally handled the suit and directed the proceedings therein. It was shown that he had, prior to his employment by Hagan, and in the course of the transaction of other legal business having no connection with Hagan's suit, been informed by Raitt by letter that he, Raitt, had sold and dee'ded the land to Ives, with the understanding that the deed was not 'to be filed until a certain loan on the land had been arranged so that the amount of the incumbrance could be filled in in the deed. Culton testifie'd that he did not remember having read this statement in this letter, and did not have it in mind at any time when he was handling the Hagan suit.

[1, 2] It seems well established by the authorities that the burden of proof was upon Ives to show that the owner of the Hagan judgment had notice, at the time of the recording of the abstract of judgment, of the conveyance to him, the deed being at that time unrecorded, an'd in the absence of a showing of such notice, a lien would be created by the recording of the abstract of judgment superior to Ives' rights under the unrecorded conveyance. Barnett v. Squyres, 93 Tex. 193, 54 S. W. 241, 77 Am. St. Rep. 854; Turner v. Cochran, 94 Tex. 480, 61 S. W. 923; Bowles v. Belt, 159 S. W. 885; Rule v. Richards, 159 S. W. 386; Whitaker v. Farris, 45 Tex. Civ. App. 378, 101 S. W. 456; Central City Trust Co. v. Waco Bldg. Ass'n, 95 Tex. 48, 64 S. W. 998.

[3] So that the first question for determination is the effect of Culton's knowledge acquired in the manner we have stated. If he is to be regarded purely as an agent for Hagan, reserving for future consideration the question as to the effect his interest, if any, in the judgment would have on the matter, we are of the opinion that Hagan would not be bound by Culton's said knowledge. Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1057; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Teagarden v. Godley Lumber Co., 105 Tex. 616, 154 S. W. 973; Mechem on Agency (2d Ed.) §§ 1808, 1813. The opinion of the Supreme Court, in the case of Texas Loan Agency v. Taylor, and reaffirmed by quotation therefrom in the case of Teagarden v. Go'dley, settles definitely in Texas the rule as to the inputation of an agent's knowledge to his principal, and its qualification as therein stated, to wit:

"This principle [referring to the general rule of notice as adopted by the court] only applies when the agent acquires his knowledge in the transaction of his principal's business; and we therefore think that the doctrine of implied notice should be limited to cases of that character."

It is not necessary in this case to 'determine whether the doctrine that the principal is affected by the knowledge of the agent acquired in other transactions, and which he had present in mind in the transaction of the principal's business (Mechem, § 1809; Wright v. Hooker, 55 Tex. Civ. App. 47, 118 S. W. 765), has any application in this state, since Culton testified that he 'did not have such knowledge in mind at the time he was transacting Hagan's business, and we would have to assume in any event, in support of the judgment that the court trying the case accepted this statement as true.

[4] But appellant further contends that the agreement that Culton and Taylor should have the attorney's fees, as above stated, constituted an assignment of an interest in the judgment, and that notice to one joint owner is notice to all, so that in this way Hagan would be bound by Culton's notice. The evidence of the indebtedness, to wit, the promissory notes sued on, were placed in Culton & Taylor's' possession, with authority to collect, and with the agreement that they were

to have the 10 per cent. collection fees therein provided. This, of course, gave them power to make the collection, retain their part, and remit the remainder to their principal. We think this is sufficient to constitute an equitable assignment of an interest in the fund, and, if not, certainly an equitable lien thereon. Caldwell v. Stalcup, 166 S. W. 110; Milmo National Bank v. Convery, 8 Tex. Civ. App. 181, 27 S. W. 828; G., H. & S. A. Ry. Co. v. Ginther, 96 Tex. 295, 72 S. W. 166; Davis & Goggan v. State National Bank, 156 S. W. 321 (writ of error denied). A rather full discussion of equitable assignments and liens and citations to authorities will be found in the case last cited. The fact that they were to get nothing until the principal and interest due on the note were first paid would make no difference, as that affects only the order of the payment of the interest of the respective parties. The agreement for the attorney's fees in this case is very similar to the one in the first case cited above, decided by this court, and the agreements in these two cases differ somewhat from that in the case of Magill v. Rugeley, 171 S. W. 528, on which appellee relies to support his contention that he had no interest in the fund itself. Whether there is any distinction to be made in these cases or not, we will follow the holding already made by this court in the case above cited.

[5] However, we do not think it necessarily follows from the holding that Culton & Taylor had an equitable interest in the fund that Culton's notice would be imputed to Hagan. They were not partners, merely co-owners of the fund, and we have already held that Culton's knowledge was not, by reason of his agency, to be imputed to Hagan. We quote the following from the opinion of the court in the case of Rippetoe v. Dwyer, 65 Tex. 703, 708, as announcing the rule which it appears to us is applicable to the case under consideration:

"We do not, however, understand the rule to be that, in case of the purchase of property by two or more persons each will be charged with notice of facts known to the other. There doubtless may be cases in which such a result will follow, as when one of the purchasers is made the agent of the others to consummate the purchase, and in the transaction of the business pertaining to his agency acquires notice or knowledge of facts which vitiate the purchase; but, 'unless one has been made the agent of the other, by virtue of partnership relations, or of some other means, neither can ordinarily be charged and held accountable for the knowledge of the other. If an incumbrance, or conveyance, be in existence affecting the title to land, and a purchase be made by several jointly, or as tenants in common, those who have notice of the incumbrance, or conveyance, will hold their title in subordination to it, while those who did not have such notice will obtain their title free from the claim to which their cotenants are subjected.'"

This announcement of the law is supported by the following additional authorities: Wait v. Smith, 92 Ill. 385; Snyder v. Sponable, 1 Hill (N. Y.) 567; Parker v. Kane, 4 Wis. 1, 65 Am. Dec. 283; Babcock v. Wells, 25 R. I. 23, 54 Atl. 599, 105 Am. St. Rep. 848; Cyc. vol. 39, p. 1762. In the case of Babcock v. Wells, supra, it was held that notice of an outstanding equity to one joint mortgagee will not bind the other.

[6, 7] Our conclusion is that upon the filing of the abstract of judgment a lien on the land in controversy was thereby created to secure the payment of Hagan's interest in the indebtedness, but Culton's knowledge of the conveyance to Ives prevented him from acquiring a lien to secure the payment of his interest. Culton & Taylor's interest in the judgment amounted to about one-eleventh thereof, so that after the foreclosure sale there was a balance due on Hagan's interest of about $230, and the remainder, being something less than $750, belonged to Culton & Taylor. Upon assignment of the judgment to Culton, that part of the judgment represented by Hagan's interest, as above stated, in our opinion constituted a lien on the land superior to the deed to Ives. The record does not show how much was bid on the execution sale of the land in controversy, as the case was tried on an agreed statement of facts in part, by which the parties agreed that said land, together with other land also levied upon, was bid in by Culton and conveyed by the sheriff to him, and the amount of the bid, after satisfying the sheriff's costs and other costs, was applied as a credit on the judgment.

[8] If any part of the judgment constituted a valid lien on the land in controversy, such lien could be foreclosed either by execution sale or by decree of foreclosure in a suit brought for that purpose. Before the assignment of the judgment to Culton upon collection of the balance due, the said sum of $230 would be first payable to Hagan, and any balance realized to Culton and Taylor.

[9] The majority of the court are of the opinion that, as a part of the judgment constituted a lien against the entire tract of land under the circumstances above stated, a sale under foreclosure of such lien would pass title to the land, at least in the absence of some showing that the land sold for more than sufficient to pay off that part of the judgment which constituted a valid lien thereon. We think the decision in the case of Hemphill v. Watson, 60 Tex. 679, is applicable to this situation. In that case a sale was made under deed of trust given to secure the payment of a note bearing usurious interest, and it was held that as the mortgage could be properly foreclosed to the extent of the principal, the remedy of the debtor would have been to tender such amount and prevent foreclosure, and, having failed to do this, the sale was valid, and the purchaser at the trustee's sale obtained a good title. See, also, Jones on Mortgages, § 620; Vaughn v. Mutual Building Association, 36 S. W. 1013. Chief Justice

Huff dissents from this conclusion, and is of the opinion that Culton could be held to be an innocent purchaser of the land only in the proportion that Hagan's interest in the judgment at the time of its assignment, unaffected by notice of the Ives deed, bears to the total amount of the balance due on the judgment, and that if the next assignment considered should not otherwise dispose of the case, it should be reversed and remanded for adjustment of the equities of the parties on this theory.

[10] These conclusions, as held by the majority of the court, result in overruling all of appellant's assignments except the seventh. By this assignment appellant contends that both sales under the judgment were void because, "the testimony shows that Culton was guilty of inequitable conduct in inducing the defendant Hinn in the Hagan suit to refrain from bidding against Hagan by a promise to release said Hinn from his liability on the Hagan judgment against Hinn and Raitt." The Hagan judgment was a joint and several judgment against Hinn and Raitt. The vendor's lien notes sued on had been originally executed by Hinn, and upon sale of the land by Hinn to Raitt the said Raitt assumed their payment. The evidence on this issue was the testimony of Culton on cross-examination, who testified that he was present at the foreclosure sale and bid the land in for Hagan at $7,500, which was the only bid made; that there was a large crowd present, and it was stated at the time that the purchaser would not have to pay his bid until he should have time to examine the title, as the land was sold with the understanding that the purchaser was to get a good, merchantable title; that other parties prior to the sale had agreed to buy the land from Hagan at $7,500, and Hagan afterwards sold to such parties—"he was willing to sell partially on terms, and they were willing to pay that price for it if he gave time in which to pay for it." Continuing, said witness further testified:

"The only person I remember to have talked to with reference to wanting to buy it was Mr. Zimmerman, who represented Mr. Hinn. I told him that if we made the deal that was then pending—if we succeeded in buying in the land —that I would look to Mr. Raitt for the balance of the money, and he told me that his client did not want to buy the land at all unless it became absolutely necessary to protect him from paying out further moneys. Mr. Hinn lived at Plainview, and I understand is a man of means. I never represented him, but he was represented by Mr. Zimmerman. I virtually made an agreement with Mr. Zimmerman that I would release Mr. Hinn from the balance of the judgment. I did that for the reason that he had conveyed the land to Mr. Raitt, who had assumed the payment of the entire indebtedness, and he, in his judgment, I believe obtained a judgment against Mr. Raitt for all the moneys he might have to pay out. I am not sure whether it is in there or not; it may not be in the judgment. I haven't read the judgment for some time. Since you mention it, it is likely that it is not because I do not believe he even entered an appearance in the case."

Any agreement that has for its purpose the restriction of free bidding at a sale of this character is regarded by law as fraudulent and against public policy. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Crozier v. Carr, 11 Tex. 380; Daily v. Hollis, 27 Tex. Civ. App. 570, 66 S. W. 586; note to Herndon v. Gibson, 20 L. R. A. 545; Freeman on Executions (3d Ed.) § 297; 6 Corpus Juris, 830; White v. McMath, 127 Tenn. 713, 156 S. W. 470, 44 L. R. A. (N. S.) 1115, and authorities there cited. Whatever may have been appellee's motives, we think that it necessarily appears from his testimony that the purpose of the release of Hinn from the judgment was his elimination from the bidding at the sale, and the transaction is to be deemed fraudulent in law.

[11] As to the effect of such conduct on the rights of the parties and the methods of redress open to those injuriously affected thereby, the authorities are in some confusion. It is often broadly stated that the sale is void, and the parties to the illegal agreement will be allowed to reap no benefit therefrom. Before proceeding further, it will be perhaps well enough to understand clearly how this fraud in the first foreclosure sale might affect the sale of the land in controversy. The judgment having decreed a foreclosure against a specific tract of land, a sale thereof was necessary before any other property might be taken under execution on a deficiency judgment; and if other property had been taken and sold under execution without a sale of the property against which the lien was foreclosed, a sale thereof would have been absolutely void, and could be attacked in a collateral proceeding. Bailey v. Block, 104 Tex. 101, 134 S. W. 323. Now if, as some of the cases hold, the sale on account of the suppression of bidding is to be treated as no sale at all, in so far as the parties participating in the wrongful act is concerned, or if, as a New York case holds, the judgment is to be treated as satisfied by the first sale, then of course, there would be no valid basis for the issuance of the execution to collect the deficiency, and the sale thereunder would be void, and could be attacked in this proceeding under the authority of the case of Bailey v. Block, supra.

In many of the states it is held that a purchaser guilty of fraud in suppressing the bidding at such a sale gets no title, that the sale is, as to the fraudulent participants in the transaction, to be treated as no sale, and that the party guilty of such misconduct has no equities, and that the title of a purchaser so participating may be questioned in an ejectment suit at law. Martin v. Ranlett, 5 Rich. (S. C.) 541, 57 Am. Dec. 770; Phelps v. Benson, 161 Pa. 418, 29 Atl. 86; Foulk v. McFarlane, 1 Watts & S. (Pa.) 297, 37 Am.

Dec. 467; Underwood v. McVeigh, 23 Grat. (Va.) 409; Gilbert v. Hoffman, 2 Watts (Pa.) 66, 26 Am. Dec. 103; Goble v. O'Connor, 43 Neb. 49, 61 N. W. 131. In this last case it is held that a fraudulent purchaser has no equities, and the sale is void as to him. Freeman, in his work on Executions (3d Ed.) vol. 2, § 297, p. 1722, says:

"Whether a purchase obtained by the prevention of competition can by the guilty party be asserted at law is a question upon which the courts are by no means agreed. In several of the states such a purchase, and the deed made in pursuance thereof, are regarded as a valid transfer of the legal title. The defendant in execution, wishing to prevent the assertion of this title, must claim the assistance of a court of equity. But the majority of the decisions sustain an adverse theory. One under which the title of the fraudulent purchaser is while in his hands regarded as void, and therefore as capable of being resisted not less successfully at law than in equity."

In the case of Troup v. Wood, 4 Johns. Ch. (N. Y.) 252, it was held, as summarized by Judge Wheeler in the case of James v. Fulcrod, supra, that:

"An agreement by the owner of an execution, with certain persons, to prevent the usual competition at a sheriff's sale and in order to leave a small balance on the execution, for the purpose of seizing other property of the debtor, was * * * fraudulent; and the execution was deemed, in law, to be satisfied."

A reference to that case, however, will disclose that the suit was brought in equity; the defendants who had bought the property at the sale were the assignees of the judgment under which it was sold, so that the suit might be really treated as a direct attack on the sale. In the case of Spencer v. Champion, 13 Conn. 19, a judgment creditor had levied on both personal property and real estate. The personal property was admittedly not sufficient in value to satisfy the indebtedness. The personal property was sold first, and the plaintiff was guilty of misconduct in stifling bidding. The real estate was subsequently sold to satisfy the balance due on the judgment after sale of the personal property, and the court held that the fraudulent acts in connection with the sale of the personal property should be punished in some other way than by a declaration of satisfaction of the judgment. There is a distinction between the Connecticut case and the one at bar, in that it was held in that case that it was not necessary to a levy upon the real estate that the personal property be exhausted, and the court bases a part of its argument in arriving at this conclusion on this fact, while here it was necessary that there be a sale and an exhaustion of the property decreed to be sold by the judgment before there could be a deficiency that would support subsequent executions. In the case of In re Hays Estate, 159 Pa. 381, 28 Atl. 158, while the facts are not in point here, the reasoning of the court tends somewhat to support the conclusion that, where a deficiency made the basis of the assertion of sub-

sequent rights is the result of frauds on the part of the owner of the judgment, the judgment ought to be held satisfied. But other courts of other states have held that such sales are not void, but voidable, and can be attacked only in a direct proceeding (Crews v. Bank, 77 N. C. 110; Love v. Powell, 5 Ala. 58), and it is stated by the writer of the note to be found in 42 L. R. A. (N. S.) 1198, that the weight of the authority is to the effect that such sales are not subject to collateral attack. In the case of Pope v. Davenport, 52 Tex. 206, in a suit in trespass to try title, where the title of the defendant was shown to have been acquired at an execution sale at which a fraud with reference to the bidding was perpetrated, the court said:

"That such an agreement was made is not denied, and that as between the proper parties it would be such fraud in law as, without regard to the fraudulent intent in fact, would avoid the sale we have no doubt. * * * The sale was voidable only, and not absolutely void, and, unless set aside by the proper party, would be binding."

In the case of Rippetoe v. Dwyer, 49 Tex. 498, the court below instructed the jury that:

"If the sheriff's sale was fraudulently made, by the connivance or with the knowledge of the defendant Rippetoe, it was absolutely void."

And the court on appeal made the following holding:

"Our opinion is that, in case of a judicial sale, made by virtue of a valid subsisting judgment or decree, authorizing the execution or order of sale under which the officer proceeds, where the proceedings are regular, resulting in a deed to the purchaser, he takes a title which is valid until the sale is set aside."

A discussion of the principles from which it may be determined whether such a sale is void or voidable will be found in the cases of Ayres v. Duprey, 27 Tex. 602, 86 Am. Dec. 657, and Boggess v. Howard, 40 Tex. 153. In the latter case the Alabama case referred to above, where it was held that such a sale could not be attacked in a collateral proceeding, is cited with approval. So that whatever may be the holding in other states, we think that the result of these authorities is that in Texas such sales are to be regarded at voidable only, and cannot be attacked in a collateral proceeding, from which it would follow that the second sale, which depended for its validity upon the first sale, was also merely voidable, and could not be attacked collaterally. We have no doubt that appellant, Ives, had such an interest in the first sale and its effect on the lien on his land that he could, in a proper procedure, attack this sale. Cravens v. Wilson, 48 Tex. 324; Flanagan v. Pearson, 50 Tex. 383; Ayres v. Duprey, 27 Tex. 604, 86 Am. Dec. 657. But the sales, being regular on their face, vested the legal title in the land last sold in Culton, and before defendant, Ives, could defeat the title, he must set aside the sheriff's sale for the alleged fraud. A proceeding to set aside the sale for fraud would be equitable in its nature, and if the cases were in those courts

where law and equity are separately administered, appellant would, in order to avail himself of this remedy, be compelled to have proceedings in the law case stayed until he carried through an equitable action to set aside the sheriff's sale and thus get rid of the legal obstacle to an adjudication of the title in his favor. Under our blended system he could, by proper pleading, if the proper parties were before the court, make this attack in the trespass to try title suit, but it is well settled that this right does not affect the nature of the relief; that it would be really an invocation of affirmative equitable action of the court, and this may not be granted under a plea of not guilty. Ayres v. Duprey, 27 Tex. 604, 86 Am. Dec. 657; Catlin v. Bennatt, 47 Tex. 172; Rippetoe v. Dwyer, 49 Tex. 498; Matthews v. Moses, 21 Tex. Civ. App. 494, 52 S. W. 113; Moore v. Miller, 155 S. W. 573; Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59; Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596. In the case of Moore v. Snowball, supra, it was held that this equitable right was so distinct from the issues involved in the trespass to try title suit that a judgment in such suit was not res judicata of the right to proceed against the sheriff's sale by a direct attack in a subsequent suit for that purpose.

The majority of the court, therefore, are of the opinion that appellant, under his plea of not guilty, cannot, in this suit in trespass to try title, collaterally attack the sale under which appellee obtains his title on account of the alleged misconduct of appellee in respect to the bidding at the first sale, and overrule appellant's seventh assignment. Chief Justice HUFF is of the opinion that the agreement with Zimmerman amounts to an agreement with Hinn not to bid, and thereby prevent the land from bringing the amount of the judgment. He for his client having theretofore contracted the land at the price bid at the sale will amount to a declaration of a deficiency judgment for the remainder. Under article 2000, R. C. S., the property against which foreclosure is had is to be seized and sold in satisfaction of the judgment. The manifest tendency of such an agreement was to prevent a sale of the land to satisfy the judgment. Its tendency is condemned, and not the result even though competition may not have been stifled; but the facts in this case indicate that competition was stifled. The appellee should be estopped from denying that the judgment of foreclosure was thereby satisfied. If satisfied, no sale for the deficiency could legally be had. This purpose to defeat a plain statute renders the sale void for the deficiency. That which he or the sheriff selling the property could not do directly they could not do indirectly. He was not at liberty to disregard one of the most fundamental principles concerning the powers of the officer under the order of sale. These powers cannot be enlarged to meet the wishes or necessities of any one. Bailey v. Block, 104 Tex. 101, 134 S. W. 323. The agreement with the defendant under the order of sale if he would not bid he should be released, and the further fact that appellee, acting for his client, had entered into an agreement to sell the land for the price at which he bid it in under the order of sale, is in effect disregarding the power of the officer to sell the land to satisfy the judgment. Affirmed.

HUFF, C. J., dissenting.